EPHLAND v. MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

Division One, January 26, 1897.

1. **Master and Servant**: SCOPE OF SERVANT'S EMPLOYMENT. While the master is responsible for wrongs of his servant committed in the course of his employment, and for the master's benefit, yet the scope of the employment may be implied from the nature and circumstances of the latter and the end to be accomplished.

2. ———: RAILROAD: PASSENGERS. A railroad company while operating a train designed for the carriage of both passengers and property is responsible for an injury resulting to a passenger from jumping from the train occasioned by the negligent and terrifying acts and exclamations of one of the brakemen, made in the car in which the passenger was traveling, and from which he might reasonably infer that a wreck of the train was imminent, though the brakeman had no express duty to perform in or about the car or in the directing of passengers.

3. **Practice**: ADMISSIONS: INSTRUCTIONS. An instruction that plaintiff's testimony against his own interest is to be taken as true should not be given where no material facts have been admitted.

*Appeal from Henry Circuit Court.*—HON. JAMES H. LAY, Judge.

*Certified from Kansas City Court of Appeals.*

AFFIRMED.

*R. T. Railey* and *Lon O. Hocker* for appellant.

(1)  Plaintiff assumed the risk incident to his position, since it was more dangerous than that regularly provided for passengers, and since he took it, not from necessity, or at the request of defendant, but for his own pleasure.  *Carroll v. Railroad*, 107 Mo. 653; *Tuley v. Railroad*, 41 Mo. App. 432; *Smotherman v. Railroad*, 29 Mo. App. 265; *Harris v. Railroad*, 89 Mo. 233; *Hickey v. Railroad*, 14 Allen, 433; *Railroad v. Hoosey*, 44 Am. Rep. 120; *Railroad v. Fay*, 63 Am. Dec. 329; *Brown v. Railroad*, 49 Mich. 153; *Doggett v. Railroad*, 34 Iowa, 285; *Railroad v. Thomas*, 1 Am. and Eng. R. R. Cases, 79; *Torrey v. Railroad*, 147 Mass. 412; *Bates v. Railroad*, 147 Mass. 255; *Files v. Railroad*, 149 Mass. 206.   (2)  Even if it be conceded that Lamb exclaimed "jump off," and that plaintiff acted upon said suggestion, and did jump off the rear end of the train while it was traveling fifteen miles per hour, yet as Lamb was not acting in his line of duty in making such exclamation—if he did make it—nor within the scope of his employment, the defendant is not liable therefor, although said Lamb may have been guilty of personal negligence in making use of said expression.   *Haehl v. Railroad*, 24 S. W. Rep. 740; *Farber v. Railroad*, 116 Mo. 93; *Sherman v. Railroad*, 72 Mo. 65; *Towanda Coal Co. v. Herman*, 86 Pa. St. 418; *Railroad v. Perry*, 27 S. W. Rep. 497; *Davis v. Houghtelin*, 50 N. W. Rep. 766; *Snyder v. Railroad*, 60 Mo. 419; *Cousins v. Railroad*, 66 Mo. 572; *Golden v. Newbrand*, 52 Iowa, 59. (3)  There being no real danger, and no reasonable cause to apprehend any, plaintiff was guilty of contributory negligence in running out of the caboose, and jumping off a train going fifteen miles an hour, in the opposite direction from which he jumped.   *Railroad v.*

*Felton,* 33 Am. and Eng. R. R. Cases, 533; *Railroad v. Wallen,* 26 Am. and Eng. R. R. Cases, 219; *Filer v. Railroad,* 49 N. Y. 52; *Railroad v. Aspell,* 52 Am. Dec. 323; *Railroad v. Rosenberry,* 11 S. W. Rep. 212; *Kleiber v. Railroad,* 107 Mo. 249; *Harris v. Railroad,* 89 Mo. 233; *Smotherman v. Railroad,* 29 Mo. App. 265; *Peck v. Railroad,* 50 Conn. 379; *Spohn v. Railroad,* 22 S. W. Rep. 692; *Railroad v. Ware,* 1 S. W. Rep. (Ky.) 494.

(4)   Even if Lamb had been at the brake, and while in the line of his duty had said "jump off," yet as there was no imminent danger, and no reasonable cause for anticipating any, and as there was no occasion for such remarks, and as the brakeman was facing the south and looking toward the engine instead of the passengers, and did not know the passengers were off until the train stopped, it can not be said that defendant was bound to anticipate that an adult, riding in the caboose, where the usual business of the company was transacted, and often done hurriedly, would recklessly jump off the train, in the opposite direction from which it was traveling, simply because the brakeman said "jump off." The demurrer to the evidence should therefore have been sustained. *Henry v. Railroad,* 76 Mo. 294; Cooley on Torts, p. 68, *et seq.;* Bishop on Noncontract Law, secs. 42, 43; *Brown v. Railroad,* 20 Mo. App. 225; *Searle v. Railroad,* 65 Texas, 274; *Hudson v. Railroad,* 101 Mo. 33; *Ewing v. Railroad,* 23 Atl. Rep. 340; *Corrister v. Railroad,* 25 Mo. App. 628; *Birney v. Railroad,* 71 Ill. 392; *Christy v. Hughes,* 24 Mo. App. 277; *Hicks v. Railroad,* 46 Mo. App. 309; *Snelling v. McDonald,* 14 Allen, 292; 1 Sutherland on Damages, 23.

*Graves & Clark* for respondent.

(1)   The evidence shows that plaintiff was in a car provided for passengers and therefore could not have

assumed any risk by being there. *Ephland v. Railroad,* 57 Mo. App. 147; *Tibby v. Railroad,* 82 Mo. 292; *Ashbrook v. Railroad,* 18 Mo. App. 304; *Gentle v. Railroad,* 33 Mo. App. 361. (2) But grant it that when plaintiff entered the caboose, that he took upon himself the necessary inconvenience and risk which accompany that sort of a car, in its relation to the management of the train, this does not interfere with plaintiff's right to recover in this case. The evidence discloses conduct not usual in the ordinary business of running the train and his position there was not the cause of the injury. *Ephland v. Railroad,* 57 Mo. App. 147. (3) The carrier is under obligations to carry the passenger safely and properly and treat him respectfully; and holds him responsible for the conduct of his servants, to whom he intrusts the performance of this duty. He is bound to protect his passengers from the violence and insults from strangers and copassengers, and *a fortiori* against the violence and insults of his own servants. *Farber v. Railroad,* 116 Mo. 91; *Croker v. Railroad,* 36 Wis. 657; *Railroad v. Flexman,* 103 Ill. 546; *Spohn v. Railroad,* 101 Mo. 452; *Spohn v. Railroad,* 87 Mo. 81; *Eads v. Railroad,* 43 Mo. App. 545; *Goddard v. Railroad,* 57 Me. 202; *Railroad v. Jackson,* 6 Am. and Eng. R. R. Cases (Ind.), 180; *Railroad v. Hines,* 53 Pa. St. 212. (4) Whether it was negligence for plaintiff to leave the car under the circumstances in this case is and was a question for the jury. Beach on Contributory Negligence [2 Ed.], sec. 40; Whitaker's Smith on Negligence, sec. 392; Hutchinson on Carriers, sec. 534; 2 Shearm. and Redfield on Negligence, sec. 647; *Kleiber v. Railroad,* 107 Mo. 240; *Dimmitt v. Railroad,* 40 Mo. App. 654; *Siegrist v. Arnot,* 87 Mo. 208; *Jones v. Boyce,* 1 Stark, 493. (5) "The law has so high regard for human life that it will not impute negligence to an effort to preserve it." This is in a case where the attempt is made to save others from

apparent danger.   The rule is and should be stronger, where one is attempting to save himself from threatened danger.   *Peyton v. Railroad*, 41 Am. and Eng. R. R. Cases (La.), 550; *Eckert v. Railroad*, 43 N. Y. 503; Beach on Contributory Negligence [2 Ed.], sec. 42; Thompson on Negligence, 1174; Pierce on Railroads, 328; Rorer on Railroads, 1029.   (6)   Having directed the act to be done the defendant is estopped from claiming that it was contributory negligence to obey the directions of its servants.   The brakeman was in a position to know the dangers, if any, impending at the time.   And from that position having given the orders and directions to these passengers the company is estopped from now saying that they were guilty of contributory negligence.   *Morrissey v. Ferry Co.*, 47 Mo. 54; *Tibbey v. Railroad*, 87 Mo. 292; *McGee v. Railroad*, 92 Mo. 208; *McIntyre v. Co.*, 57 N. Y. 286; *Fuller v. Railroad*, 39 N. Y. 351; *Burcher v. Railroad*, 98 N. Y. 128; 2 Redfield on Railroads, 278, and note; Thompson on Carriers, p. 227, note 6; Beach on Contributory Negligence [2 Ed.], secs. 67, 68.

MACFARLANE, J.—This action is for damages on account of bodily injuries sustained by plaintiff on account of the alleged negligence of defendant.

The case has been twice tried, each trial resulting in a judgment for plaintiff.   On appeal the first judgment was reversed by the Kansas City court of appeals. 57 Mo. App. 147.   Defendant also appealed from the second judgment to the same court, and the case was certified to this court; the opinion, which resulted in an affirmance of the judgment, and which was agreed to by a majority of the court of appeals, being deemed by one of the judges to be in conflict with certain decisions of the supreme court.

Only one point is insisted upon by defendant as ground for reversal, and the facts need only be briefly stated:

Defendant operates a railroad from Butler, south. On the morning of the twelfth day of March, 1892, it ran a mixed train out of Butler on said road. The train was composed of some freight cars; a combination car for carrying passengers, their baggage, and the mail; and a caboose for the convenience and accommodation of the train men. The last named was the end car of the train, and, by permission of the company, was used by passengers for a smoking car.

It was constructed in the usual manner, with a cupola in the front end. The brake ran up into the cupola on the right or west side, near which a seat for the rear brakeman was provided. The cupola on the left side was provided with two seats,—one for the conductor, and the other for the use of the other brakeman when not actually engaged in his duties on the train. The car was designed for use in freight trains. From the seats in the cupola the movements of the train could be observed by the conductor and brakeman. The position of the brakeman in charge of the brakes was in view of the passengers, but the two seats on the opposite side were not.

The train on this morning was in control of a conductor, and he had under him two brakemen, named Lamb and Little. The duties of the latter were on the hind end of the train, and his proper position while the train was moving was at the brake in the cupola. Lamb is denominated by the witnesses as a "swing brakeman." His duties, as defined by the conductor, were to take charge of the train, and do the switching, in the conductor's absence.

The conductor testified: "When we arrive at a station, the station agent has a switch list, which he

gives the conductor, and the bills which are to go, and gives the switch list to the swing brakeman, and while the conductor attends to the other part in loading freight, and, if he gets car out, to go; the swing brakeman does this with the assistance of the front brakeman." This brakeman had no duty to perform in the caboose; had nothing to do with directing passengers or calling out stations.

On starting the train from Butler, Little took his proper position at the brake in the cupola, on the west side. The conductor and Brakeman Lamb occupied the cupola on the left or east side. These positions were retained until the occurrence of the circumstances in which plaintiff was injured.

Plaintiff and three other persons were passengers riding in the caboose.

In order to fairly present the question for decision, the foregoing facts are assumed to be true, though the evidence is conflicting as to whether brakeman Lamb or Little was at the brake on the right side of the cupola.

After the train had run two or three miles south, a single short blast of the whistle was sounded by the engineer. This signal meant that the train must be stopped, and called for the assistance of the brakemen. On hearing this signal, it became the duty of the brakeman to promptly apply the brakes.

The evidence tends to prove that, on hearing this signal, Little commenced turning the brake in the cupola, which, in taking up the slack in the chain, made a rattling noise, and brakeman Lamb shouted, in an excited voice, "Jump off!" "Jump for your lives!" or words of similar import, and himself came hastily down from the cupola, and ran through the car and out at the front door.

Vol. 137 mo—13

This exclamation and action of Lamb excited the passengers in the caboose, and one of them called out, "Let us get out of here," or words to that effect, and ran and jumped from the rear end of the car. Plaintiff followed, and also jumped off, the car being at the time in rapid motion, and received the injuries for which he claims damages in this suit.

Counsel insist that Lamb, when making the negligent exclamation and act, was not acting in the line of his duty, or within the scope of his authority, and defendant is not, therefore, answerable for the damage resulting therefrom.

A number of errors are assigned by appellant, but one only is now insisted upon. It resolves itself into this: Is a railroad company, while running a train designed for carrying both freight and passengers, answerable for damage resulting to a passenger from jumping from the train on account of the negligent and terrifying acts and exclamations of one of the brakemen, made in the car in which he was being carried, and from which he might reasonably infer that a wreck of the train was imminent, though such brakeman had no express duty to perform in or about such car, or in the direction of passengers?

There can be no doubt of the correctness of the abstract proposition of law invoked by counsel,—that the master is only answerable for the wrongs of his servant which are committed in the course of the service, and for the master's benefit. But the scope of a servant's duties may be implied from the nature and circumstances of the employment, and the end to be accomplished.

Defendant was a carrier of passengers, and its duty to those carried required great care in the running and management of its trains. Lamb was employed as a brakeman on the train. It is true, the expressed duties

required of him were limited, and did not include that of directing passengers, or of managing the passenger cars. Under ordinary circumstances, it may be agreed that he had no implied authority to perform such duties. But he was employed to assist in accomplishing the end the master had in view, namely, the safe carriage of the passengers and freight intrusted to its care.

A brakeman would certainly have the implied authority, in order to save a train and the passengers, to set brakes, or perform any other duty, though not in the ordinary course of those expressly assigned to him. Had a wreck of the train really been imminent, and passengers could have been saved by timely warning, who can doubt the duty and authority of any one employed upon the train to assist in its management, to give the warning? This would be a duty, not merely of humanity, which all humane persons would perform, but a duty to the master, and in furtherance of his business. In such an emergency, in which the avoidance of the threatened danger required prompt action, a brakeman who discovered the peril would surely not be required to hunt up the employee who was expressly authorized to direct passengers, in order that the warning might be regularly given.

If, in case of such an emergency, any brakeman on the train could, in the name of the company, give the passengers warning of the danger, they would have the right to rely and act upon such warning. It could make no difference that no real danger was imminent, as in this case. If the brakeman had authority to give the warning in case of actual danger, the passengers had the right to rely and act upon one, though there was really no danger and he had in fact no good reason for apprehending it.

While the terrifying acts and exclamations of Lamb may not have been done in the ordinary course of his employment, it was, in the circumstances, within the scope of his employment, and plaintiff had the right to act upon them; and defendant is answerable for the results, unless, in acting, plaintiff was himself, negligent.

It is said in 1 Shearman & Redfield, Negligence, section 148:

"The act causing the injury must have been one within the scope of the authority which the servant had from the master, or which the master gave the servant reasonable cause to believe that he had, or which servants employed in the same capacity usually have, or which third persons have a right to infer from the nature and circumstances of the employment."

This ruling we do not think in conflict with the general rule before announced, or the numerous decisions of this court, applying it to particular facts.

In case of emergency, in which the lives of passengers and the destruction of property are threatened and the danger is imminent, the nature and purpose of the employment of a brakeman implies the duty to give aid whenever necessary, in preventing the threatened disaster; and, in circumstances of peril, fright, and panic, passengers have the right to rely on his directions. The scope of authority is determined from the general nature of the employment, and the emergency calling for its exercise, as shown by the evidence in the particular case. We know of no contrary ruling of this court under the same or similar circumstances. The judgment of the court of appeals is affirmed. All concur.

ON MOTION FOR REHEARING.

MACFARLANE, J.—On motion for rehearing counsel for defendant insists, in effect, that any waiver of other

errors than the one considered in the foregoing opinion was intended to apply only to the submission of the case in the Kansas City court of appeals.

The court's error in considering the waiver as general was a natural one, inasmuch as the case was submitted to this court, without argument, upon the briefs filed in the court of appeals.

The chief complaint now made is the refusal of the court to give instruction 5 asked by defendant, which is as follows:

"If the jury believe from the evidence that William Lamb was not in the west cupola, nor at the brake, from the time the train left Butler until the accident complained of, your verdict must be for the defendant."

The legal proposition involved in this instruction is, that if brakeman Lamb was not at the brake, or in other words, if he had no duty to perform in the car, defendant is not answerable for his negligent exclamations. Without setting out the instruction, on account of criticisms made to its form, we undertook, in the opinion, to answer the legal question. We are still satisfied with the conclusion reached, viz., that if Lamb was employed by defendant as a brakeman to assist in operating the train, in the circumstances shown, defendant should answer for his negligence, and it would make no difference what his local position in the car may have been, or whether he had any duty to perform therein or not. In the opinion we assume that Lamb was not at the brake, and the question was fairly considered.

The instruction for the reason given in the opinion was properly refused.

What is said in the opinion is also a sufficient answer to the objection now urged to the ruling of the court in refusing defendant's demurrer to the evidence.

But see, also, companion case of *McPeak v. Railroad*, 128 Mo. 648, opinion by GANTT, J.

Defendant asked the court to instruct the jury that, "what plaintiff testified to against his own interest is to be taken as true." The instruction was refused by the court, and counsel assigns its action as error.

The admissions of plaintiff while testifying as a witness, to the truth of which counsel wish to conclude him, all relate to the duty of brakeman Lamb, and the liability of defendant for his acts and exclamations. He admitted while testifying that he did not know that Lamb was at the brake, or set the brake, nor was he certain of the exact words of the exclamation. To conclude a party to a suit to the truth of all the facts he admits while testifying that he does not know, unless knowledge is material, would be a rather harsh rule. But, as held in the opinion, it made no difference whether Lamb was at the brakes or not, and, therefore, the knowledge of plaintiff could make no difference, and an affirmative admission of want of knowledge would be wholly immaterial.

We do not think there were any admissions of plaintiff, while testifying, that authorized giving the instruction. Such instructions should not be given unless facts material to the issue have been admitted.

After a careful consideration of all grounds insisted upon for a rehearing, we conclude that all are fairly answered by the opinion. The motion is overruled. All concur except ROBINSON, J., who is absent.