# W. H. HILL, Respondent, v. EAST ST. LOUIS COTTON OIL COMPANY, a Corporation, Appellant.

Springfield Court of Appeals, June 19, 1919. On motion for Rehearing, July 10, 1919.

1. **PLEADING: Sufficiency of Petition after Verdict: Injury to Servant.** A complaint alleging that plaintiff was injured in operating a defective cotton gin, through which defendant negligently started wet cotton, and this and the defects described combined to start a fire in trying to extinguish which plaintiff was injured, *held* not fatally defective after verdict, in that casual connection between the negligence and injury is not sufficiently alleged.

2. **MASTER AND SERVANT: Injury to Servant: Contributory Negligence: Servant's Knowledge of Dangerous Machinery.** An experienced gin operator who is acquainted with the machinery, which he does not attempt to stop, and who knows the location of the revolving saws and the danger of contact therewith, is negligent in thrusting his gloved hand into a narrow space next to the saws in an attempt to catch cotton dropping therein.

3. ———: **Contributory Negligence: Attempt to Save Property.** A person guilty of contributory negligence, not amounting to rashness, is excusable therefrom if the negligent act is for the purpose of saving life or limb of a third party; but not so, if for the purpose of saving property.

4. ———: **Injury to Servant: Attempt to Save Master's Property: Contributory Negligence.** An experienced cotton gin operator, injured by contact with the revolving saws of the machine, which he did not attempt to stop, *held* guilty of contributory negligence in thrusting his gloved hand in a narrow space next to the saws in attempting to grab burning cotton therein to save his employer's property from fire caused by employer's negligence in starting wet cotton through the machine. BRADLEY, J., dissenting.

ON MOTION FOR REHEARING.

5. **APPEAL AND ERROR: Reversal of Judgment for Plaintiff: Necessity of Remanding.** A judgment for plaintiff should not be reversed without remanding unless the evidence has been fully presented, and the court is fully convinced that the facts are necessarily such that plaintiff cannot be allowed to recover.

Appeal from the Dunklin County Circuit Court.—*Hon. W. S. C. Walker,* Judge.

REVERSED AND REMANDED.

*L. R. Jones* for appellant.

*O. Zimmerman* and *Ely, Pankey & Ely* for respondent.

STURGIS, P. J.—Defendant appeals from a judgment for plaintiff in a personal injury action. The plaintiff was injured while operating a gin stand in defendant's cotton gin by his hand and arm coming in contact with the revolving saws used to separate the cotton lint from the seed. There were some seventy of these saws on one axle revolving close together and between ribs which were part of what is called the gin breast. The gin breast could be raised so as to have these ribs clear of the saws and this left a space of one foot between what is called the spiked roller and the revolving saws. Plaintiff thrust his hand into this space to catch some burning cotton to prevent same from falling into the seed conveyor and thereby his hand was caught by the revolving saws.

The defendant's alleged negligence relates to the setting on fire the cotton, which in turn caused plaintiff to thrust his hand near these saws in an endeavor to prevent the spread of the fire, rather than to any negligence directly connected with the accident. The case went to the jury on defendant's negligence in putting wet cotton into the gin and having a worn and defective brush wheel (a part of the gin machinery) whereby so much friction and heat were created that the cotton being ginned suddenly took fire.

In the view we take of the case it will not be necessary to further discuss the cause of the cotton being set on fire as we grant that the evidence is sufficient to warrant a finding that defendant was negligent in the

respects mentioned and that the cotton being ginned suddenly took fire by reason of friction and heat caused by the worn and defective brush wheel operated by defendant and by reason of wet cotton being fed into the gin.

In this connection we may also say that we do not agree with defendant's contention that the petition is fatally defective, at least after verdict, in that there is no allegation of a causal connection between the negligent acts complained of and the resultant injury. We agree that acts of negligence on defendant's part and injury to plaintiff do not make a cause of action unless there is alleged and proved a causal connection between the two and plaintiff is only entitled to go to the jury on the grounds of negligence which he alleges caused his injury. [State ex rel. v. Ellison, 176 S. W. 11.]

In this case, however, plaintiff, after alleging that the part of the gin stand called the brush wheel and which assists in removing the lint from the ribs between which the saws pass was out of line and balance and had a tendency to create friction, then alleges that plaintiff was injured in operating said defective gin stand "in the following manner." He then alleges that defendant negligently started wet cotton through the gin without notice to him and that wet cotton has a tendency to create friction and heat; that the friction from the wet cotton and from the defective parts of the gin set fire to the cotton and that in order to prevent the spread of the fire to other parts of the plant plaintiff attempted to extinguish the fire by taking out the burning cotton with his hands in doing which his hand came in contact with the revolving saws. This we think is a sufficient allegation that these negligent acts of defendant were the cause of plaintiff's injuries, for when he alleges that he was injured in the *following manner* and then sets out the negligent act of putting wet cotton in the gin and that this and the defective parts of the gin which he had described combined to start the fire, in trying to extinguish which he was in-

jured, plaintiff has, we think, by plain inference if not direct assertion alleged such negligent acts to have caused his injuries.

The serious point in the case arises on the question of plaintiff's contributory negligence barring his action. Leaving out of consideration for the moment the *emergency* created by the gin taking fire and plaintiff's impulse to save his master's property and considering the case under normal conditions and as if plaintiff had done as he did in the ordinary course of operating the gin, we must say that plaintiff was guilty of contributory negligence amounting to almost gross negligence. Plaintiff was an experienced operator of a gin and was well acquainted with the machinery. He knew the location of these rapidly revolving saws and the danger of coming in contact with the same. He had on gloves and knew that this increased the danger of his hand being caught by the saw teeth. He punched the burning cotton between the ribs with one hand and then thrust the other in the narrow space of one foot next to these revolving saws to catch or grab at the burning cotton as it fell through and this too when he could not see into this narrow space so as to guide his hand away from the saws. On this point plaintiff testified.

"Q. You knew when you were raking your hand around there that that was highly dangerous with these saws revolving, did you not? A. I knew if I got my hand into it, it was.

"Q. You just depended on your own ability to keep your hand out of there? A. That is all the hopes I had.

"Q. You knew that if you got your hand in there it was gone? A. Yes, sir, I knew if I did, but I didn't think I would do it.

. . . . . . . .

"A. As I was punching it out, I was reaching under and catching it as it fell.

31—Mo. App.

"Q. And you say you knew the danger of these saws? A. I knew the danger if they got hold of me.

. . . . . . . . .

"Q. Did you tell him (a witness) after you came back that the saw caught your glove and pulled you in; that it couldn't happen any other way? A. That is about the only way it could happen to catch in this glove.

. . . . . . . . .

"Q. You were in under those saws catching this fire when you couldn't see how near you were getting to the saws? A. Well, I had an idea where the saws were.

"Q. But you couldn't see? A. No, sir, I couldn't see the saws."

Every witness in the case testified as to the obvious danger attending plaintiff's act in attempting to catch in his gloved hand the burning cotton falling through this narrow space next to these revolving saws, characterizing such act as "very dangerous," "awfully dangerous," etc. One witness, an experienced ginner, said he never knew of but one other man putting his hands "back of this board with the saws running" and he was killed. What is said in Smith v. Forrester-Nace Box Co., 193 Mo. 715, 735, 92 S. W. 394, is applicable here:

"Plaintiff admits that he knew if his hand came in contact with the rollers it would be injured. His only excuse for putting his hand into that small space between the presser and the back rollers is that he did not intend to put his hand where it would come in contact with the back rollers. But any man of ordinary intelligence would know that if he did so, the danger of injury was imminent, for the danger was obvious. Such an act itself suggests the inevitable consequences." [See, also, Doerr v. St. Louis Brewing Assn. 176 Mo. 547, 556, 75 S. W. 600; Stegmann v. Gerber, 146 Mo. App. 104, 123 S. W. 1041.]

It is sought on plaintiff's behalf to justify or excuse his action in bringing his hand in contact with the

revolving saws on the ground that he acted in an emergency the emergency being the sudden fire in the cotton which threatened the destruction of the defendant's property. This raises the question of the right and to what extent the servant may commit an otherwise negligent act threatening injury to himself in order to protect the master's property when such property is imperilled by the master's negligence. In other words may a servant do an otherwise negligent act threatening his own injury in order to save his master's property from destruction and recover damages based on the negligent act of the master in putting such property in peril?

It is not claimed that plaintiff was in any peril. All that he claims is that on discovering the cotton on fire he was apprehensive that it might spread and destroy defendant's property and his reason for catching the burning cotton in his hand, as he punched it through the ribs of the gin breast, was to prevent its falling into the conveyor and passing to the seed house. Plaintiff did this without stopping the machinery as he might readily have done by pulling a cord attached to a whistle. Though plaintiff alleges negligence in that a certain lever by which the machinery could be stopped was defective and could not be worked, yet the evidence shows that he did not want or try to have the machinery stopped.

This case is clearly distinguished from the class of cases cited by plaintiff where a servant is excused of alleged contributory negligence when he acts in an emergency amounting to personal peril brought about by the master's negligence, such as Underwood v. Railroad, 190 Mo. App. 497, 177 S. W. 724. Here there was no threatened injury or impending danger to plaintiff and he was actuated solely by the commendable desire to protect the master's property put in peril by its own negligence. We do not stress the fact, however, that the master's property was put in peril by its own negligence, for, perhaps, plaintiff's position is just as favorable to him as if the master's property had been

put in peril by the negligence of a third party and plaintiff was suing such third party.

It is the generally accepted rule of law that the person who by his negligence puts another in peril of death or bodily injury is liable to one who is injured in an attempt to rescue such imperilled person and that it is not contributory negligence for the rescuer to imperil his life or put himself in a position of great danger in his effort to rescue such person from peril, unless his act amounts to rashness or recklessness. [20 R. C. L., sec. 108, p. 131; Corbin v. City of Philadelphia (Pa.), 49 L. R. A. 715 and cases cited in note.]

Where, however, only property is so imperilled the decisions are by no means unanimous as to how far, if at all, this rule is applicable. Some courts hold that one voluntarily attempting to rescue property assumes the risk of so doing and if injured thereby the person causing the peril, though negligent in so doing, is not liable. Other courts do not bar a recovery where the rescuer has acted as a reasonable person would under the circumstances; that is, is without negligence under the particular facts. [20 R. C. L., sec. 110, p. 133; 29 Cyc. 524.] The cases on this subject are collected in the notes to Corbin v. City of Philadelphia, 49 L. R. A. 719. [McKay v. Atlantic Coast Line Railroad Company (N. C.) Ann. Cases 1914C, 412.] In the note to the Corbin case, supra, which deals primarily with risks taken to save life or bodily injury, it is stated that "voluntarily incurring danger is justifiable so as not to constitute contributory negligence only when it is for the purpose of saving life; if the purpose is to save property only this rule does not apply." Several cases are cited as so holding. A leading case on this subject is Eckert v. Long Island R. Co., 43 N. Y. 502, 3 Am. Rep. 721, where the rule is announced:

"A person voluntarily placing himself, for the protection of *property* merely, in a position of danger, is negligent, so as to preclude his recovery for an injury so received. It is otherwise, however, when such an ex-

posure is 'for the purpose of saving human life, and it is for the jury to say, in such cases, whether the conduct of the party injured is to be deemed rash and reckless.''

'And this language is used: ''The evidence showed that the train was approaching in plain view of the deceased, and had he for his own purposes attempted to cross the track, or with a view to save property placed himself voluntarily in a position where he might have received an injury from a collision with the train, his conduct would have been grossly negligent, and no recovery could have been had for such injury. . . .

For a person engaged in his ordinary affairs, or in the mere protection of property, knowingly and voluntarily to place himself in a position where he is liable to receive a serious injury, is negligence, which will preclude a recovery for an injury so received; but when the exposure is for the purpose of saving life, it is not wrongful, and therefore not negligent unless such as to be regarded either rash or reckless.''

The doctrine has been affirmed and adhered to by the New York Courts, Morris v. Lake Shore Ry., 148 N. Y. 182, 42 N. E. 579, where it is held that one ''voluntarily exposing himself to danger at a railroad crossing is guilty of contributory negligence though the exposure was made to save his cattle from injury.'' The Eckart case was cited with approval in Donahue v. Railroad, 83 Mo. 560, though that case deals with attempting to save life. In the recent case of Eversole v. Railroad, 249 Mo. 523, 155 S. W. 419, our Supreme Court there expressly quoted and approved the above statement of the law in the Eckert case. The court there held that a railroad brakeman who voluntarily exposed himself to danger in order to stop some runaway cars could not recover for injuries so received against the party through whose negligence such cars were set adrift, if such brakeman was endeavoring to save property only, though it would be otherwise if he was attempting to save life or bodily injury. The court ex-

pressly said that "we have never extended the doctrine of 'imminent peril' to mere property" and held that where a petition is based on the imminent peril doctrine and it is shown that property and not life was in peril "then there was a failure to make any case under the pleadings *as well as under the proof.*" In McManamee v. Railroad Co., 135 Mo. 440, 37 S. W. 119, the court held that a person could not recover for injury received in attempting to rescue his own property put in peril by defendant's negligence where the rescuer "precipitated himself in front of the train" and in speaking of this case the court in the Eversole case, supra, said: "But on the other hand we have held that the rescue of property will not excuse rash acts upon the part of the rescuer."

In the Eversole case and in the New York cases followed by it, the rescuer was a third party and not the owner or a servant of the owner whose property was in peril but in the McManamee case the plaintiff was attempting to rescue his own property. A person seeking to save his own property should be accorded as favorable a position as one attempting to save his master's property, though a stranger to the property might be looked upon less favorably than either. The courts and text writers seem, however, to have made little distinction along this line and a number of cases deny liability in favor of the owner of the property. [Cook v. Johnson, 58 Mich. 437, 55 Amer. Rep. 703; Hinchy v. Manhattan R. Co., 49 N. Y. Superior Court 406; Taylor v. Home Tel. Co. (Mich.), 128 N. W. 728.]

In Logan v. Wabash Ry. Co., 96 Mo. App. 461, the plaintiff was injured *without any negligence* on his part in attempting to save his own property from fire negligently set out by defendant and the court held that he could not recover because defendant's negligence merely furnished the condition and was not the proximate cause of plaintiff's injury. This case is along the line that a person voluntarily attempting to save property put in peril by another's negligence assumes

Hill v. Cotton Oil Co.

all the risks of doing so. It and some other cases may be distinguished from the present case in that the plaintiff was a pure volunteer while here he was acting along the line of his employment in seeing that this machinery was properly and safely operated.

We are not prepared to say that the law in this State is that a person attempting to save his own or his master's property when put in peril by negligence and is acting along the line of his duty takes all the risk of doing so and that his act in so doing is negligence *per se*. If the rescuer is not guilty of negligence in so doing he should recover. Such is the weight of authority. [29 Cyc. 542: 20 R. C. L., sec. 110, p. 133.] Nor do we hold that the fact that the person seeking damages was at the time of his injury attempting to save his own or his master's property of no weight in determining whether or not he is guilty of contributory negligence. [Prophet v. Kemper, 95 Mo. App. 219, 225: Hall v. Huber, 61 Mo. App. 384.] The difficulty is in determining what weight shall be given to such fact. This fact becomes very potent in case of an attempt to save life and unless the rescuer acts recklessly or rashly his act will not be held contributory negligence. [Condiff v. Railroad (Kas.), 25 Pac. 562.] All the cases agree, however, that in case of attempting to rescue mere property this fact has much less weight in excusing what would otherwise be contributory negligence. [See Pegram v. Seaboard Air Line Ry. (N. C.), 4 Ann. Cases 214 and cases cited in text and note; McKay v. Atlantic Coast Line Railroad (N. C.), Ann. Cases 1914C, 412.]

It is also doubtless true as stated in the note to this last case that the Missouri cases are on the side of restricting to narrow limits the effect which the fact of rescuing mere property has on excusing what would otherwise be contributory negligence. The most potent fact in favor of this rule is that the servant has no right to endanger the master in a far greater loss than that which he sought o aver.

We hold, therefore, that plaintiff under the facts here was guilty of contributory negligence barring his recovery and the judgment is reversed. *Farrington, J.,* concurs. *Bradley, J.,* holds that the evidence is sufficient to take the cause to the jury, and dissents.

## ON MOTION FOR REHEARING.

STURGIS, P. J.—Our attention is called to the case of Slinkard v. Lamb Construction Company just published in 212 S. W. 61. That case in effect holds that when a plaintiff is guilty of an act contributing to his injury which all fair minded men must say is negligent, then the fact that the plaintiff was actuated by a desire to have his owner or his master's property and acted in such emergency cannot excuse his contributory negligence. The Court there said:

"The evidence before us does not show that the plaintiff was, in endeavoring to stop the team, undertaking something which, in the judgment of an ordinarily careful and prudent man, could be held to have been liable to cause him a serious injury. We are all the more of this opinion in view of the fact that in the present case the plaintiff is not a mere volunteer, but was under a duty by reason of his employment to take the necessary steps, commensurate with safety to himself, to control the horses."

If we could here say that plaintiff's act in thrusting his gloved hand in this narrow space next to the revolving saws and grabbing at burning cotton dropping therein was one "which in the judgment of an ordinarily care and prudent man could be held (not) to have been liable to cause him a serious injury" then the case is one for the jury. We all agree that such is the law but are not agreed that under the facts in this record plaintiff's said act is conclusively negligent. The majority of the court so holds but it may be, as is urged, that we do not fully understand the mechanism of the cotton gin and the physical facts connected with plain-

Malone v. Railway Co.

tiff's injury. The evidence is not as full and satisfactory as it might be as to the inherent and necessary danger attending plaintiff's action. There may be evidence on another trial taking that question to the jury and a case should not be reversed without remanding unless the evidence has been fully presented and the court is fully convinced that the facts are necessarily such that plaintiff cannot be allowed to recover. [State ex rel. v. Robertson, 187 S. W. 34, 36; Finnegan v. Railway, 244 Mo. 608, 662.] We conclude therefore, that the case should be reversed and remanded and it is so ordered.