Joseph BOYD, Jr. (Plaintiff), Appellant,

v.

TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, a Corporation (Defendant), Respondent.

No. 45035.

Supreme Court of Missouri.
Division No. 1.

March 12, 1956.

Motion for Rehearing or to Transfer to Court en Banc Denied April 9, 1956.

Tom R. R. Ely, St. Louis, for appellant.

Warner Fuller and Arnot L. Sheppard, St. Louis, for respondent.

VAN OSDOL, Commissioner.

Plaintiff, Joseph Boyd, Jr., instituted this action under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., against the Terminal Railroad Association of St. Louis for $75,000 for personal injuries. A jury returned a verdict for defendant, and plaintiff has appealed from the ensuing judgment.

Plaintiff's case was submitted to the jury in Plaintiff's Instruction No. I on the theory that plaintiff, a switchman, was on a freight car contained in a train of thirteen cars drawn by a switch engine in a westbound switching movement in defendant's Pickrell Yard in St. Louis; that defendant's employees operating in an eastbound switching movement moved defendant's train of cars negligently and against instructions across a connecting track toward the train on which plaintiff was riding so that there was imminent peril of collision; and that by reason of such negligence plaintiff "had reason to believe and did believe that he was in peril of being injured or killed by such collision, and that by reason thereof he jumped from the car on which he was riding and was injured." Defend-

ant by answer had admitted the allegations contained in paragraphs of plaintiff's petition pertaining to the applicability of the Federal Employers' Liability Act; denied allegations of defendant's negligence; and alleged plaintiff was contributorily negligent "in that he voluntarily left a place of safety, climbed up on top of one of the freight cars in his train and exposed himself unnecessarily on top of said car if said car should be hit by another moving car; that he ran the risk by unnecessarily climbing on top of the car as there was no emergency involving death or injury to any person which required him to go on top of said car; that he was at no time required to jump from the roof of said car and if he did so he did so negligently and carelessly."

Plaintiff-appellant contends the trial court erred in instructing the jury. Defendant-respondent urges the basic contention that plaintiff failed to make a case submissible to a jury, and furthermore contends there was no error in the questioned instructions.

■ In ruling the contention that plaintiff did not make a submissible case, the appellant court considers the evidence in the light most favorable to plaintiff. The evidence favorable to plaintiff is considered as true, and plaintiff is given the benefit of every reasonable inference therefrom; and defendant's evidence, unfavorable to plaintiff, is disregarded.

Defendant's main-line east-west tracks are north of defendant's switch tracks in the Pickrell Yard. Generally the switch tracks lie in an east-west direction. In moving a train from defendant's main line to the Pickrell Yard, a cross-over track is used to pass trains westwardly to an east-west track, known as the "third rail," which is north of defendant's switch shanty. Trains may be moved westwardly over on the third rail to and beyond a switch on the third rail some three hundred feet west of the switch shanty, thence eastwardly down the "drill track," a connecting or cross-over track, and through the "puzzle" and onto one of five numbered switch tracks to the eastward. The puzzle consists of

the various rails, points, frogs and mechanisms whereby trains may be switched to the various tracks in the yards east, west and south of the puzzle. The puzzle is approximately ten feet south of the westerly end of the switch shanty. It is two hundred eighty-nine and one-half feet from the point of the switch at the third rail and drill tracks to the westerly end of track No. 3 (Pickrell 3) at the puzzle. Track No. 3 in its farther extension westwardly is known as "the horn," and from the westerly end of the puzzle the horn veers or curves southwestwardly. Another east-west switch track, called the "pocket," is approximately eighteen feet south of the puzzle.

At 3 o'clock in the morning of April 5, 1954, plaintiff, foreman of a switch crew, had been working in assembling a cut or train of thirteen cars on track No. 3 east of the puzzle. Plaintiff's switch crew included head man Cross and hind man Restoff. The switch engine, headed eastwardly, was on the west end of the cut of thirteen cars. Plaintiff had orders to move the train westwardly through the puzzle onto the horn, thence to the "back yard" to the southward. As the switch engine on plaintiff's train reached the puzzle, plaintiff was hanging on the stirrup on the south side near the east end of the fourth car from the engine. At this time he saw another cut of cars which we shall sometimes hereinafter refer to as "Roemmich's train".

Roemmich's train had proceeded westwardly along the third rail past the switch at the west end of the drill track. Roemmich's train was destined to move eastwardly into Pickrell Yard by way of the drill track and through the puzzle. The train consisted of a cut or string of thirteen or fourteen cars with engine on the west end of the train. The switch crew in charge of Roemmich's train included the foreman Cole and the head man Roemmich.

A short while prior to the westward movement of Roemmich's train on the third rail, Cole, the foreman, was in the switch shanty and received orders from yardmaster Baker to pull "up over the (drill track) switch and hold his hand up." By this yardmaster Baker meant that the Roemmich train was to be pulled westwardly on the third rail to the westward of the drill-track switch and there to remain until "Boyd's train came out of Pickrell 3 going around the back yard." Plaintiff, then present in the switch shanty, heard the yardmaster's instructions. Cole transmitted these instructions to Roemmich.

As stated, when the engine of plaintiff's train proceeding westwardly had reached the puzzle, plaintiff was on the stirrup of the fourth car from the engine. Plaintiff testified that at this time he saw Roemmich's train shoving eastwardly through the drill-track switch. Admittedly, this eastbound movement was against the yardmaster's instructions, and if continued would bring the east end of Roemmich's train into contact with plaintiff's train which was then proceeding westwardly on track No. 3 through the puzzle around the horn. Plaintiff could not precisely say how fast Roemmich's train was moving, but it was "coming pretty dog-gone fast." When plaintiff first saw Roemmich's train, it was eight or nine car lengths to the westward. Plaintiff attemped to signal the Roemmich train, and when plaintiff was about the middle of the puzzle, he started up the side of the car— "I just went up as fast as I could get up there." He went up the ladder when the Roemmich train "started coming through the switch." Roemmich's train was then going about ten miles an hour. When plaintiff was on the car, he was signaling and "hollering and yelling." He was standing near the southeast corner of the top of the fourth car. When Roemmich's train was about a car length and a half away and "still coming pretty fast," plaintiff "thought it best to jump off, so I sat down and scooted off the side of the car. * * * I was just more or less frantic there, I wanted to get off as best I could * * *." When he struck the ground he was injured, but he crawled southwardly underneath another cut of cars "in the pocket there, to more or less get out of the way so it wouldn't crush me." The Roemmich train did not actually collide with plaintiff's train.

(There was testimony that plaintiff had made statements to the effect that he sustained his injury when he jumped between two cars of the cut set in the pocket; and there was testimony that the Roemmich train, at the time, did not proceed more than a car length or so to the eastward of the drill-track switch.)

Defendant-respondent, in urging that plaintiff did not make a submissible case, argues that the mere fact that Roemmich's train did not remain west of the third-rail switch does not prove defendant's negligence, but that, assuming the movement eastwardly on the drill track was negligent, there was no evidence tending to prove the movement might reasonably be expected to injure anybody. It is said the absence of proof of the reasonable foreseeableness of injury necessarily creates an absence of proof of proximate cause between negligence and injury.

It seems the yardmaster's instructions that Roemmich's train was to remain west of the drill-track switch until plaintiff's train had cleared the puzzle was a safety as well as an operational measure. But it is argued by defendant-respondent that the eastward movement of the Roemmich train through the switch could not have constituted actionable negligence, because the testimony of Roemmich, who was plaintiff's witness, was undisputed that his train had moved only a car length or so into the drill track. It is also argued that both plaintiff and Roemmich knew of the positions and of the expected movements of both trains. Consequently, it is said, plaintiff had no reason to act on the supposition that Roemmich's train might be negligently moved farther eastward into threatened collision with plaintiff's train, and Roemmich had no reason to anticipate that plaintiff would act on such a supposition. A difficulty with these arguments, in urging the negative of negligence and proximate causation, is that plaintiff knew the Roemmich train was ordered to remain west of the drill-track switch until plaintiff's train cleared the puzzle in moving around the horn, and yet as plaintiff's train was moving through the puzzle on track No. 3 plaintiff saw Roem-

mich's train "shoving" eastwardly through the drill-track switch. Furthermore, plaintiff's testimony, and the testimony of his witness Cross, would support a conclusion that Roemmich's train was moving eastwardly "pretty fast" when it was a car length and a half from plaintiff's train, and was brought to a stop when it was but a half car length therefrom.

Causal connection is usually a jury question, and it is settled that liability does not depend alone upon whether, in the exercise of reasonable diligence, a defendant could foresee or ought to have foreseen, the very injury complained of, but the party charged with negligence may be held liable for any injury which, after the casualty, appears to have been a natural and probable consequence of his act or omission. Gaines v. Property Servicing Co., Mo.Sup., 276 S.W.2d 169; Dodson v. Maddox, 359 Mo. 742, 223 S.W.2d 434; Mrazek v. Terminal R. Ass'n of St. Louis, 341 Mo. 1054, 111 S.W.2d 26.

In the instant case we believe it should have been anticipated, in the exercise of reasonable care, that the movement of the Roemmich train bearing down the drill track toward plaintiff's train might cause some injury, and although the manner of the injury might not have been reasonably anticipated, nevertheless, now, after the event, it reasonably could be said that plaintiff's act (and his injury) in the effort to forestall a collision was a reasonable and probable consequence of the movement.

Defendant-respondent has cited and stressed Johnson v. Terminal Railroad Ass'n of St. Louis, 320 Mo. 884, 8 S.W.2d 891, 61 A.L.R. 572, in which case plaintiff's decedent Nexsen was injured when struck by the sill of a freight car after he had "chocked" the car wheel. Nexsen had no duty to chock the wheel. Defendant's employee, Sherman, had failed to perform his duty to chock it. The only result which reasonably could have been anticipated from Sherman's negligence was damage to property. It was held that the negligence of Sherman was not the proximate cause of Nexsen's injury. It was

also stated that Nexsen's act in voluntarily exposing himself to danger by going in front of the rapidly moving freight car could not be justified on the "imminent peril" doctrine. Such doctrine was said to apply only when an act is necessary to save life or limb.

In the Johnson case, this court in speaking of the "imminent peril" doctrine was no doubt referring to the doctrine, sometimes called the "rescue" doctrine, that one in attempting to save the life, limb or property of another imperiled by the negligence of a defendant is justified in exposing himself to danger in a manner that under other circumstances would deprive him of legal redress for injuries sustained. See Carney v. Chicago, R. I. & P. R. Co., 323 Mo. 470, 23 S.W.2d 993; Donahoe v. Wabash, St. L. & P. Ry. Co., 83 Mo. 560; Restatement, Torts, § 445; and generally, 38 Am.Jur., Negligence, §§ 80 and 81, pp. 738–741. But it has been said that in Missouri negligence of defendant which imperiled property only is not the proximate cause of the injury received by another in an attempt to avoid the impending consequences to property, although some of the cases treat of such conduct of the injured party as contributory negligence barring recovery. See Tayer v. York Ice Machinery Corporation, 342 Mo. 912, 119 S.W.2d 240; Johnson v. Terminal Railroad Ass'n of St. Louis, supra; Eversole v. Wabash R. Co., 249 Mo. 523, 155 S.W. 419; Hill v. East St. Louis Cotton Oil Co., 202 Mo.App. 478, 214 S.W. 419.

■■ Many factors go into the determination of a case of this nature on the question of proximate causation—the instrumentality involved; the legal relationship of the parties and their respective duties; and the parties' conduct in the circumstances of the casualty. It has been written that the better-reasoned decisions approach the question "under a policy of inclusion and exclusion in the application of the controlling principle of law to the facts of the individual case rather than by attempting to announce general rules designed to embrace a number of the factors involved." Tayer v. York Ice Machinery

Corporation, supra, 342 Mo. at page 926, 119 S.W.2d at page 246.

Now, plaintiff's conduct in climbing to the top of the car in the circumstances, including the circumstance that the Roemmich train was then several car lengths away, was not like the act of Nexsen in the Johnson case. Nexsen, having no duty to chock the wheel, moved immediately in front of the fast-moving freight car. Nor was plaintiff's conduct like that of plaintiff Tayer in Tayer v. York Ice Machinery Corporation, supra, who knowingly went into a room filled with highly explosive gas. Nor was plaintiff's conduct like that of plaintiff Eversole in Eversole v. Wabash R. Co., supra, who voluntarily got on an engine threatened by a collision with runaway freight cars. Nor is our case like Hill v. East St. Louis Cotton Oil Co., supra, wherein plaintiff Hill thrust his gloved hand into a small aperture in the mechanism of a cotton gin containing revolving saws.

■ We bear in mind that plaintiff was the foreman of the switch crew operating his train, and it is not to be supposed that he had no duty in the circumstances to operate the train safely. Having seen the approach of the Roemmich train, plaintiff attempted to stop the movement by signaling (although vainly) from the ladder or stirrup on the side of a car. He then moved to the top of the car that he might the better signal to those in charge of the approaching train. It could be reasonably urged that plaintiff's conduct in going to the top of the car in the circumstances obtaining at the time was a natural and reasonable act of one in charge of a train. According to plaintiff's testimony, his signals given while on top of the car were not observed or heeded and he, apprehending the immediate danger of a collision as the Roemmich train continued farther eastwardly in its approach, felt obliged to jump from the car and was injured. It would seem that the reasonable apprehension of an impending collision will excuse one in jumping from a vehicle or a train, even though he would not have been injured if he had remained on the con-

veyance (compare Ephland v. Missouri Pac. Ry. Co., 137 Mo. 187, 37 S.W. 820, 38 S.W. 926, 35 L.R.A. 107 [a carrier-passenger case]); and ordinarily an employee is not denied recovery by reason of the fact that, upon reasonable apprehension of danger, he jumped from a train in an effort to escape injury. Cases collated in 10 Ann. Cases 766; also, generally, Prosser, The Law of Torts, § 49 at pages 270–272. We are of the opinion it should not be held as a matter of law that plaintiff's conduct in the circumstances was reckless, rash, foolhardy or extraordinary and interrupted the causal connection between defendant's negligence and plaintiff's injury. This is not to say that a jury would not be justified in finding that defendant's negligence as submitted was not the proximate cause. It also reasonably could have been found that plaintiff was not negligent, or if negligent that such negligence was but a contributing or concurring cause or "in part" the cause of plaintiff's injury. But, of course, in this case contributory negligence is not a bar to plaintiff's recovery. 45 U.S.C.A. § 53.

We now turn to the consideration of plaintiff-appellant's contentions of error in instructing the jury.

At defendant's request the trial court instructed as follows,

"Defendant's Instruction No. V. You are instructed that before you can render a verdict in favor of plaintiff Boyd, you must find from the greater weight of the evidence: (1) that before he climbed to the top of the car he had reason to, and did, believe that the other cut of cars would collide with his cut of cars, unless he stopped the movement of the other cut; (2) that if such collision occurred human life or limb would be endangered, rather than a mere damage to property; (3) that he had good reason to, and did, believe that he could save human injury by climbing to the top of the car he mentioned and signalling to stop the other cut of cars; and (4) that it was to avoid injury to a human being, rather than damage to property, which caused him to make the attempt, if he did, to stop the movement of the other cut of cars. You cannot bring in a verdict in favor of plaintiff Boyd if you believe that at that time and place the only danger, if there was any danger, was to property rather than to a human being or to human beings.

"Defendant's Instruction No. VI. You are instructed that before you may render a verdict in favor of plaintiff Boyd, you must believe from the greater weight of the evidence that there was an actual and imminent danger of a collision between the cuts of cars on track No. 3 and the drill track, or that the circumstances were such as to convince a reasonably cautious person that there was an actual and imminent danger of such collision; that if there was a collision, it would create a hazard to a human being rather than a danger of property damage; that plaintiff had reason to believe, and did believe, that it was reasonably necessary for him to climb to the top of his cut of cars and try to stop the movement of the other cut of cars. Unless you find these to be the facts, your verdict cannot be for plaintiff Boyd, but should be for the defendant railroad company."

The instructions were that the jury could not render a verdict for plaintiff, unless, before or at the time plaintiff "climbed to the top of the car," plaintiff had reason to believe and did believe he could save human life or limb "rather than property," and that danger of a collision was actual and imminent. The instructions were not in the converse of the theory plaintiff's principal instruction (No. I) which, as stated, hypothesized that plaintiff had reason to believe and did believe there was imminent danger of a collision and had reason to believe and did believe that he was in peril of being injured or killed, and that by reason thereof he jumped from the car on which he was riding. Apparently Instructions Nos. V and VI were drafted on the theory of the imminent peril or rescue doctrine as mentioned in the Johnson case.

Plaintiff's evidence did not tend to show that a collision was immediately impending or imminent when he climbed to the top of the car. Plaintiff's evidence was that Roemmich's train was several car lengths away when plaintiff went to the top of the car. And, as we have stated, defendant-respondent has urged herein that the evidence shows Roemmich's train, at the time, never moved more than a relatively few feet east of the drill-track switch. It would seem that no evidence supported the hypothesis or submission of the negative of the application of the rescue doctrine in negativing proximate causation between defendant's negligence and plaintiff's injury. The submission of the saving or rescue of "property only" in an hypothesized immediately impending collision situation not supported by evidence should be considered erroneous. In this way the hypothesized act of plaintiff in going to the top of the car, which conduct in the circumstances of this case we believe a jury could have found amounted to no more than contributory negligence, was submitted as a complete defense. Moreover, *negligence* of plaintiff in the circumstances of his going upon the car was not hypothesized, that is, both instructions *assumed* that the manner in which plaintiff was attempting to stop Roemmich's train was unreasonable in the circumstances and that he could not recover except on the jury's finding of facts calling for the application of the rescue doctrine justifying his negligent conduct. And the instructions did not submit in any way that any negligence of plaintiff was *the* cause of his injury and that his injury was not due to negligence of defendant as submitted in plaintiff's Instruction No. I. Here it clearly may be seen, we believe, that under Instructions Nos. V and VI if the jury believed there was danger of a collision threatening damage to property only, the jury, in following the instructions, was obliged to return a verdict for defendant. This, even though the jury reasonably could have believed that defendant was negligent and that defendant's negligence was in whole or in part the cause of plaintiff's injury, and that plaintiff was not negligent, or that his negligence, if any, was but a concurring or contributing cause or in part the cause of his injury. Our conclusion is that each of the Instructions Nos. V and VI (in itself and in combination with the other) was prejudicially erroneous.

The opinion will not be prolonged by consideration of contentions of error in the giving of other instructions in behalf of defendant. Other errors in instructing the jury, if errors be apparent to counsel, may be avoided upon retrial.

The judgment should be reversed, and the cause remanded.

It is so ordered.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.