(74 South. 172)

(No. 21305.)

MATHIS v. KANSAS CITY SOUTHERN RY. CO. et al.

(Oct. 18, 1915. On the Merits, Jan. 15, 1917. Rehearing Denied Feb. 12, 1917.)

*(Syllabus by the Court.)*

On Motion to Dismiss Appeal.

1. APPEAL AND ERROR ⊜⇒389(1)—LITIGATION IN FORMA PAUPERIS.

A person litigating in forma pauperis, under Act No. 159 of 1912, does not cease to be a plaintiff, defendant, or intervener by becoming an appellant or appellee, and is entitled to the benefit of the act on and after, as well as before, the appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2072, 2073.]

On the Merits.

2. MASTER AND SERVANT ⊜⇒228(2)—SAFETY APPLIANCE ACT—DEFENSE—CONTRIBUTORY NEGLIGENCE.

Under the federal safety appliance legislation, standard logging cars of a certain description are excepted from the requirement of air brakes, and hence, though a railroad company operate cars of that description without air brakes, it is not thereby precluded from setting up contributory negligence as a defense to an action in damages for injury sustained by an employé by reason of its alleged negligence in the equipment and operation of a train of such cars.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 671.]

3. MASTER AND SERVANT ⊜⇒246(3) — INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE.

In an action in damages for personal injuries, received in an effort to save property from a danger to which it was subjected by the alleged negligence of another, there can be no recovery where it appears that the injured person exposed himself recklessly, or failed to exercise such care and caution as a reasonably prudent man would have exercised under the same circumstances; the rule in such cases being different from that which obtains where injuries are received in the effort to save human life.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 792, 793.]

Appeal from Twelfth Judicial District Court, Parish of Sabine; J. H. Boone, Judge.

Suit by Mrs. Dottie Mathis against the Kansas City Southern Railway Company and others. Suit dismissed, and plaintiff allowed a devolutive appeal without giving bond for costs. Motion to dismiss appeal overruled, and judgment affirmed.

Hundley & Hawthorn, of Alexandria, for appellant. Alexander & Wilkinson, of Shreveport, and S. D. Ponder, of Many, for appellees.

On Motion to Dismiss Appeal.

MONROE, C. J. [1] Plaintiff's suit having been dismissed, she was allowed a devolutive appeal without giving bond for costs, under Act 156 of 1912, which reads in part:

"That any person, who is a citizen of this state, or who if an alien, has been domiciled in this state for three years, shall have the right to prosecute and defend in all the courts of this state all actions to which he may be a party whether as plaintiff, intervener, or defendant, without the previous or current payment of costs or the giving of bonds for costs, if he is unable because of his poverty to pay such costs or to give bond for the payment of such costs. This right to litigate without the previous or current payment of costs or without the giving of bonds for the payment of costs shall extend to all the services required by law in legal proceedings of clerks of court, sheriffs and official stenographers, and to obtaining copies of notarial acts from public officers and notaries and certificates from public officers in respect to records of their officers. * * *

"The judges of the various courts may make such rules for the support and enforcement of this act as are proper and consistent with its provisions: Provided that none of the provisions of this act shall apply to suits for * * * separation from bed and board."

Defendants (appellees) move to dismiss the appeal on the ground that the act is confined in its application to "plaintiff, intervener, or defendant," and does not include an appellant. We reached a different conclusion in the matter of Adrien Serpas v. St. Bernard Cypress Co., 74 South. ——,[1] No. 21,336 of the docket, in which a motion similar to that under consideration was overruled, and we adhere to the view, expressed at greater length in that case, that, for the purposes of the act, a litigant does not cease to be a plaintiff, a defendant, or an intervener by becoming an appellant or appellee, and hence that he is entitled to the benefit of the act on and after the appeal as well as before.

The motion to dismiss is therefore overruled.

### On the Merits—Statement of the Case.

Plaintiff prosecutes this appeal from a judgment rejecting a claim for damages sustained by her in consequence of the alleged negligent killing of her husband by a logging train of the Zwolle & Eastern Railway Company, operated on the main track of the Kansas City Southern Company, it being alleged that the Zwolle Company and the Sabine Lumber Company were interested together, and the three companies having been made defendants. The material facts disclosed by the evidence are as follows:

Decedent was foreman of a section gang in the employ of the titular defendant, and on the day of the accident (September 3, 1914), at about 6 o'clock p. m., was returning, with his men on a hand car after a day's work, to the village of Zwolle. They were aware of the fact that the log train, consisting of a locomotive and 18 loaded cars, was due to return to Zwolle on the same track, and were on the lookout for it, and, when they reached a curve in the road, which began at a point, say 2 miles from Zwolle and ran through a

[1] 141 La. ——.

cut, they stopped and looked and listened, but, seeing and hearing nothing of the train, went on until they reached a point, say, 150 or 200 yards beyond the cut, and were running on a straight track, down a rather heavy grade, and upon a "fill" or embankment some 12 feet high, when their attention was attracted by the whistle of the locomotive, which was blown first for a crossing, not far ahead, and then almost continuously as a signal to the hand car to clear the track. The section gang immediately devoted their attention to the stopping of the hand car, which they succeeded in doing, after it had traveled, say, 500 feet, and they then attempted to remove it from the track, and got off three of the wheels, when, finding that the fourth had caught on one of the rails, and that the train was quite near them, they, with the exception of Henry Moore and the foreman, abandoned the work and fled to safety. Moore stayed on the job until the locomotive was within, say, 45 feet, or less, when he, too, quit, and thereupon, when the locomotive was within 20 feet of the car the foreman, who had up to that time been standing by directing the work, sprang forward and took hold of the car, in an apparent attempt to complete its removal, and he, or the car, was instantly struck by the locomotive, and he was so injured that he soon died. The engineer and others of the train crew testify that they first saw the hand car as the engine came out of the curve at a distance of 150 or 155 yards, and that a crossing whistle was at once blown to warn the section gang; and the engineer testifies that, when he then observed that the section gang were trying to stop the hand car, he blew the danger signals and did all that he could to stop the train, that is to say, he reversed the engine, applied the air brake with which it was equipped and sanded the track, but, there having been no brakes on the log cars, and the train being a heavy one, running on a down grade,

he had succeeded only in slowing, and not in stopping, it when it reached the point at which the hand car had been stopped—something less than 1,000 feet from the point from which' he had first seen it. Plaintiff's witnesses testify variously that the train came out of the curve at a speed of from 20 to 30 miles an hour, and were unable to say how much, if at all, it had slowed at the moment of the collision. Defendants' witnesses, the engineer, fireman, brakeman, and superintendent, who were on the train, testify that it was moving when coming out of the curve at the rate of 15 or 18 miles an hour, and had slowed down to from 8 to 12 miles when it struck the hand car. Plaintiff placed on the stand two locomotive engineers as experts to show within what distance such a train might have been stopped, if all the cars, as well as the locomotive, had been equipped with air brakes.

One of them (Mr. Barbro) gives the following testimony in his examination in chief, to wit:

"Q. Mr. Barbro, suppose a log train consisting of a locomotive and 18 loaded log cars, going at the rate of 20 to 30 miles an hour, came in sight of a hand car about 800 feet away, going in the same direction; * * * please state whether or not, in your opinion, the log train could have been stopped by the time it reached the hand car, or, if not stopped, about what rate it would have been going. (Objected to on the ground that it is a hypothetical question, based upon a state of facts that has not been proven.) A. Now I will tell you; that depends upon the condition of the grade, the condition of the rails, and the condition of the brakes. Well, I think a man ought to slow down to about 8 miles an hour in 800 feet, but not stop. * * * Q. Now, in about what distance, in your opinion, would the engineer be able to stop the train, if properly equipped with air brakes, and going slightly down grade. A. Between 1,200 and 1,500 feet; them cars are hard to hold."

The witness testified that he had been more than 30 years a locomotive engineer, and had heard of but one lumber company the log cars of which were equipped with air brakes.

The other witness, Mr. Russell, had been a locomotive engineer for eight years, and had heard of no other lumber company whose cars were equipped with air brakes, save the one referred to by Mr. Barbro. He testified that he thought that a train such as described, properly equipped with air brakes, and moving at 20 or 25 miles an hour, could be stopped within 800 or 1,000 feet, and that, going down a slight grade, it could be slowed within 800 feet to 5 or 6 miles an hour.

It was shown by defendants' witnesses that the grade of the track where the accident occurred was 1 per cent., and that 1 per cent. was a heavy grade. It was shown that it was the duty of the section foreman to keep a lookout for trains and keep the track clear for their use; and we infer that it was well known to him that the cars of the log trains were not equipped with air brakes.

### Opinion.

Plaintiff's counsel seem to rely upon the propositions: (1) That defendants were operating the train which inflicted the injury complained of over a railroad engaged in interstate commerce in violation of the provisions of the acts of Congress requiring the cars constituting such trains to be equipped with air brakes and declaring that a railroad company which has failed to comply with that requirement shall not be heard to interpose the plea of contributory negligence; (2) that, apart from the requirement mentioned, it was gross negligence to operate a heavy train without making adequate provision for stopping it in case of emergency; (3) that, where one is placed, through the negligence of another, in a position of sudden peril, and thereby sustains injury, he cannot be charged with contributory negligence by reason of his failure to exercise the better judgment which he might have commanded under other conditions.

[2] The safety appliance legislation to which counsel refer contains an exception

(embodied as a proviso in Act March 2, 1893, c. 196, § 6, 27 Stat. 532 [U. S. Comp. St. 1913, § 8610]) which reads as follows:

"Provided, that nothing in this act * * * shall apply to trains composed of four wheel cars or to trains composed of eight wheel standard logging cars where the height of each car, from top of rail to center of coupling does not exceed twenty-five inches, or to locomotives used in hauling such trains when such cars or locomotives are exclusively used for the transportation of logs."

[3] We understand from the evidence and from the argument of plaintiff's counsel that the engine and cars here in question were within the above description and exception, from which it follows that defendants were not in the position of having failed to comply with the requirement of the statutes, and hence are not precluded from setting up the plea of contributory negligence, which, as we think, is determinative of the case; for, while it is not made clear that the speed of the train was unusual or excessive, it is shown beyond controversy that the section foreman was aware of its approach in ample time to have enabled him to get out of the way, and that he did, in fact, get out of the way, and stood in a place of safety until the last man of his gang had abandoned the attempt to get the hand car off the track, and, then, when the locomotive was within 20 feet of the car, sprang forward and took hold of the car, and in that same instant was struck by the locomotive, from which it also follows that the argument, predicated upon the theory that he acted under the impulse of a sudden danger to which he was subjected by reason of the negligence of the defendants, is inapplicable to the situation. It is said, however, that he must be presumed to have acted from a humane desire to protect the members of the train crew, and we find the following in counsel's brief, to wit:

"Who can tell but that he might have suddenly realized that this locomotive was weighted down by a precious charge of human freight; that among those who might in an instant be dashed into eternity was his friend Gill Smith."

According to the evidence in the record, about all that was said by the unfortunate man after the accident was in the way of a request for water, complaints of suffering, and the statement to one of plaintiff's witnesses, "I tried to save my car," and, as several railroad men of long experience testified that they had never heard of a train being wrecked by a collision with a hand car, and that the presence of such a car upon the track was not regarded as a serious danger to a train, for the reason that the pilot of the locomotive will ordinarily go underneath it and throw it off, we conclude that the decedent was actuated by no other purpose than that stated by him, and which, though laudable in itself, did not call for any imminent risk of either life or limb, and still less for the apparently desperate and hopeless venture described by the witnesses, which, and not the negligence attributed to defendants, cost him his life. If it were made certain that the train crew were in immediate danger by reason of the position of the hand car, that decedent's attempt was inspired by the desire or impulse to save them, and that the danger had not been caused or contributed to by his negligence, the case might still be within the rulings which have been made in a number of cases where recovery has been allowed. But, according to our understanding of the evidence, the decedent was at fault in bringing about or contributing to bring about the situation which culminated in the accident. He knew that the train was expected, and that it had the right of way, and, moreover, that it was his duty, as section foreman, to clear the right of way for the train, and he was at fault in placing himself, his gang, and his car in a position where he could not properly discharge that duty, so that, even if he had been injured in an effort, under these circumstances, to save the lives of the train crew, the necessity therefor would have aris-

en from his own negligence, in whole or in part. But the danger to the train crew was not imminent, and, as it appears to us, the decedent risked and lost his life in an effort to save the hand car, and, as it was he who had put the hand car in danger, there can be no recovery on account of the injury sustained by him in that effort. On the other hand, though it be conceded that the danger to the hand car was not caused by his negligence, the rule (so far as it may be considered established) in regard to the risk that one may take for the saving of property is different from that which is applied where the saving of life is involved. When the question is one of saving property:

"It is necessary," say the authorities, "that the person injured should have acted with such care and caution as a reasonably prudent man would have exercised under the same circumstances; it being insufficient to show merely that he did not act recklessly. A few cases take the contrary view and hold that a person who voluntarily places himself in a position of danger simply for the protection of property is negligent so as to preclude recovery for injury received." 29 Cyc. 524.

We find no error in the judgment appealed from, and it is accordingly affirmed.