## SINGLETON v. FIRST NAT. LIFE INS. CO.
### No. 14785.

Court of Appeal of Louisiana. Orleans.
Nov. 26, 1934.

Chas. J. Mundy, of New Orleans, for appellant.

Normann & McMahon and Harold M. Rouchell, all of New Orleans, for appellee.

LECHE, Judge.

Plaintiff brought this suit against defendant, claiming the proceeds of a certain policy of life insurance as beneficiary thereunder. In her petition plaintiff invokes the provi-

sions of Act No. 156 of 1912, as amended by Act No. 260 of 1918, commonly referred to as the Pauper Act, permitting a litigant to prosecute an action without previous or current payment of costs, or the giving of a bond for costs, if he is unable, because of his poverty, to pay such costs, or give a bond for same. Article 10 of the petition contains the requisite allegations of poverty and citizenship and at the foot of the petition appears the necessary affidavits and the proper order signed by the trial judge permitting the filing of the suit under the statute and in accordance with law.

Defendant filed its answer, alleging payment under the policy sued on, and denied the allegations of article 10 of the petition "for lack of sufficient information upon which to base a belief." Defendant prays that its plea of payment be maintained and that plaintiff's suit be dismissed without cost to defendant. Nowhere else in the answer is any reference made to plaintiff's poverty, or to the provisions of the Pauper Act. The record does not disclose that the adverse party (defendant) filed a summary rule to traverse the truth of applicant's claim, as provided by section 1 of the statute.

The cause came up for trial on the merits on July 11, 1933. Counsel for defendant called plaintiff to the witness stand, under cross-examination, and questioned her as to her poverty. Plaintiff testified that she worked for various persons by the day, receiving the sum of $1 for each day that she worked and that she worked one day a week. She further testified that her brother lived with her and paid her $1.50 per week for board and lodging and that her house rent was $12 per month. She testified that some months previous, out of the proceeds of another policy of life insurance, after paying the funeral expenses, she received the sum of $40.50, which she had used, and that she supported herself as best she could. Upon the conclusion of the cross-examination the trial judge refused to hear the case on the merits and ordered plaintiff to pay the costs incurred within five days, or have her case dismissed. Plaintiff failed to pay the costs incurred and, on October 16, 1933, judgment was rendered dismissing plaintiff's suit at her cost. It is from this judgment that plaintiff has appealed.

Act No. 260 of 1918, amending and re-enacting section 1 of Act No. 156 of 1912, reads in part as follows:

"Be it enacted by the General Assembly of the State of Louisiana, That any person, who is a citizen of this state, or who if an alien has been domiciled in this state for three years, shall have the right to prosecute and defend in all the courts of this State, including all the Appellate courts, all actions to which he may be a party whether as plaintiff, intervenor, or defendant, without the previous or current payment of costs or the giving of bonds for costs, if he is unable because of his poverty to pay such costs, or to give bond for the payment of such costs. * * * Provided that no officer shall be required by reason of this act to incur any cash outlay, the judges of the various courts are directed to restrict the provisions of this act to granting the relief provided to those litigants clearly entitled to require the probable free rendition of services of court officers, due regard being had to the nature of the cause of action the prospective cost and the means of the litigant to make payment of costs or provision for their payment, to the end that those entitled in reality to the relief set out above may receive them in proper instances but that the fomentation of litigation by the indiscriminate resort to this act be avoided. * * * The Judges of the various courts may make such rules for the support and enforcement of this act as are proper and consistent with its provisions, provided that none of the provisions of this act shall apply to suits for divorce or separation from bed and board."

Act No. 156 of 1912 reads in part as follows:

"Be it further enacted, etc., That no person shall have the right to exercise the privilege herein granted unless he shall file with his petition, if a plaintiff, or with the first pleading he shall file, as intervenor or defendant, his own affidavit declaring that because of his poverty and want of means he is unable either to pay the costs of the case in advance or as they accrue or to give a bond for the payment of such costs, and the affidavit of a third person declaring that he knows the party and knows his financial condition and that he firmly believes that the party is unable either to pay the costs of the cause in advance or as they accrue or to give bond for the payment of such costs. On the presentation of such affidavits it shall be the duty of the judge to make inquiry into the facts of the case and if such examination shall convince him that such party is unable to pay costs or to give bond for the same, he shall enter and [an] order permitting the applicant to litigate in the cause without the payment of costs previously or as they accrue, and

without giving bond for such costs. Any adverse party in any cause in which such an order is entered shall have the right by a summary rule to traverse the truth of the applicant's claim, and if such traverse is successful the court shall rescind such order and condemn the applicant to pay all the costs accrued to date inclusive of the costs of the rule. Until such order is rescinded, the presentation of a certified copy thereof to any official, as above defined, shall make it obligatory upon such official to perform the legal duties pertaining to the conduct of said cause required by him by the applicant." (Section 2.)

██ The statute in question was designed to afford relief to those litigants whose poverty would otherwise deny them access to a tribunal for the redress of their wrongs. It is essentially the poor man's legislation, without which the remedies afforded him by law would be vain and useless. It must be borne in mind that the statute does not entirely relieve the payment of costs, but only postpones payment until final determination of the cause. It is a moratorium. In White v. Walker, 136 La. 464, 67 So. 332, 333, the court said:

"This statute does not relieve a pauper citizen of this state of the obligation to pay costs. The fourth section of the act provides that, if judgment be rendered against a litigant who has availed himself of the privilege granted by the act, he shall be condemned to pay the costs incurred by him and recoverable by the other parties to the suit.

"Hence the statute only relieves pauper citizens of this state of the obligation of paying court costs in advance or as they accrue or furnishing bond and security for such costs."

In Hudnell v. Thames, 178 La. 131, 150 So. 854, 855, the court said:

"This court believes that the pauper act is wholesome legislation, and its object, as expressed in its title, is intended to afford relief to people who are penniless, and who are without means to secure the court costs."

██ The courts of this state have also held that the statute is remedial and should be given a liberal construction. Smith v. Lyon Cypress Co., 140 La. 507, 73 So. 312; State ex rel. Messina v. Cage, Judge (La. App.) 152 So. 399.

██ The statute provides with particularity the procedure in order to take advantage of the benefits therein conferred. Under section 2 above quoted the litigant must file with his petition, or first pleading, as the case may be, his own affidavit declaring that, because of his poverty and want of means, he is unable either to pay the costs of the case in advance, or as they accrue, or to give a bond for the payment of such costs. He must also file the affidavit of a third person declaring that he knows the litigant and knows his financial condition and that he firmly believes that the litigant is unable either to pay the costs in advance, or as they accrue, or to give bond for the payment of such costs.

Immediately following these requisites, the statute provides two methods for determining whether or not the litigant is entitled to the benefits conferred. It provides first that:

"On the presentation of such affidavits it shall be the duty of the judge to make inquiry into the facts of the case and if such examination shall convince him that such party is unable to pay costs or to give bond for the same, he shall enter and [an] order permitting the applicant to litigate in the cause without the payment of costs previously or as they accrue, and without giving bond for such costs." (Section 2.)

This provision makes it mandatory for the judge, "on the presentation of such affidavits," to make an inquiry or investigation and to convince himself whether the litigant is entitled to come under the provisions of the statute. If he is so convinced, it is then his duty to enter an order permitting the applicant to litigate without payment of costs in advance, or as they accrue, and without bond.

In State ex rel. Gentry v. Stephens, as Judge, etc., 2 La. App. 460, the court said:

"The true intent of the act, No. 156 of 1912, Section 2 is not that 'on presentation of such affidavit it shall be the duty of the District Judge * * * to enter an order,' but that on presentation of such affidavit it shall be the duty of the District Judge to make inquiry into the facts of the case and if from such examination he is convinced that the affiant is unable to pay costs or give bond for costs he shall enter an order permitting the applicant to litigate without the payment of costs previously or as they accrue and without giving bond for such costs.

"The true intent of the act, we think, is that the District Judge shall make inquiry into the applicant's ability to pay costs or give security for their payment and after he has made such inquiry his discretion in permitting or refusing the application cannot be disturbed in the absence of a showing that he had abused his discretion."

The statute does not limit in any way the scope of the inquiry which it is the duty of the judge to make upon presentation of the affidavits. He is permitted to go as far as necessary to ascertain the facts. An example of the scope that such an inquiry may take is well illustrated by the Succession of Lewis, 178 La. 227, 151 So. 189. In that case the court said:

"In his return the district judge certifies that upon Miss Lewis' application to prosecute her suits in forma pauperis, he made inquiry into the facts of the case as provided in section 2 of the above acts, and that he ascertained that she had assessed to her on the assessment rolls for the parish of Iberia, for the year 1933, property of the assessed valuation of $4,500. He found further that the succession of John B. Lewis, in which relatrix owns an undivided one-fourth interest as a forced heir, was assessed at $11,500.

"He certifies further that according to an investigation made of the mortgage records of the parish, the property assessed to relatrix individually is not mortgaged, and that there are no judgments recorded against her. He says further that his investigation convinced him that the property is worth considerably more than its assessed value. For these reasons, he refused to permit relatrix to institute and prosecute these proceedings in forma pauperis."

■ Whatever the extent of the inquiry made by the judge, when he enters his order permitting the applicant to litigate under the statute, it is presumed that he has convinced himself that the applicant comes within the terms and intent of the legislation.

The second method for ascertaining the poverty or means of the applicant immediately follows the first. The statute further provides that:

"Any adverse party in any cause in which such an order is entered shall have the right by a summary rule to traverse the truth of the applicant's claim, and if such traverse is successful the court shall rescind such order and condemn the applicant to pay all the costs accrued to date inclusive of the costs of the rule." (Section 2).

■ The intent of this provision is that, should the adverse party believe the judge in error in his finding, or should he have information which he believes was not available to the judge in making his inquiry, such adverse party may proceed by summary rule to traverse the truth of applicant's affidavits by giving the applicant an opportunity to come into court after notice and defend his position.

In the present case, the trial judge entered his order permitting plaintiff to file this suit under the provisions of the statute without the payment of costs in advance, or as they accrued, and without furnishing a bond for costs, and it is presumed that, before issuing such order, the trial judge complied with the provisions of the statute by making an inquiry and convincing himself that plaintiff was entitled to avail herself of the benefits conferred. The answer was filed by defendant joining issue and the case came up for trial on the merits and it was at this juncture that plaintiff was ordered to pay costs within five days, or have her suit dismissed. No summary rule to traverse was filed by the adverse party and plaintiff was taken wholly unawares that her affidavits of poverty would be contested. We do not think that it is the intention of the statute that the applicant *should thus be taken by surprise.*

In the case of Palmer et al. v. Wyatt Lumber Co., Ltd., 146 So. 494, 496, in discussing the right to litigate under the pauper act, the Court of Appeal (Second Circuit) said:

"But this right is not absolute. It is always within the power of the trial judge with or without a traverse of plaintiffs' allegations of poverty, to prevent any abuse of this act, for it provides further: 'Provided that no officer shall be required by reason of this act *to incur any cash outlay, the judges of the various courts are directed to restrict the provisions of this act to granting the relief provided to those litigants clearly entitled to require the probable free rendition of services of court officers, due regard being had to the nature of the cause of action the prospective cost and the means of the litigant to make payment of costs or provision for their payment, to the end that those entitled in reality to the relief set out above may receive them in proper instances but that the fomentation of litigation by the indiscriminate resort to this act be avoided.'* "

Our interpretation of the statute prevents an unqualified agreement with the statement of our learned colleague that "it is always within the power of the trial judge with or without a traverse of plaintiffs' allegations of poverty, to prevent any abuse of this act." The poverty and want of means contemplated by the statute clearly means that poverty and want of means obtaining at the time of filing the petition, if plaintiff, or at the time of the filing of the first pleading, if intervener or defendant. Provision nowhere is

made for taking advantage of the benefits conferred after filing of the petition, or first pleading. This is the plain language of section 2, which reads:

"Be it further enacted, etc., That no person shall have the right to exercise the privilege herein granted unless he shall file with his petition, if a plaintiff, or with the first pleading he shall file, as intervenor or defendant, his own affidavit declaring that because of his poverty and want of means he is unable either to pay the costs of the case in advance or as they accrue or to give a bond for the payment of such costs, and the affidavit of a third person declaring that he knows the party and knows his financial condition and that he firmly believes that the party is unable either to pay the costs of the cause in advance or as they accrue or to give bond for the payment of such costs. * * *"

█ The trial judge having made the inquiry required of him on presentation of the affidavits, exhausted the discretion vested in him when he convinced himself of applicant's right to litigate under the statute and entered his order to this effect. He was powerless under the statute to act further, unless and until a summary rule to traverse was filed by the adverse party, upon the trial of which rule he was again vested with the discretion to determine from the showing there made whether or not the party was entitled to the benefits conferred. To hold otherwise would be to vest the trial judge with powers not contained in or contemplated by the statute. It would permit him at any time during trial to question the truth of applicant's affidavits without giving the applicant an opportunity to prepare his defense, or even to have present the third party who made oath as to his property. The power of the trial judge to prevent an abuse of the statute lies in his discretion, upon presentation of the application and affidavits, to refuse to enter his order permitting the applicant to litigate under its terms and in the discretion vested in him on the trial of a rule to traverse. The duties and discretion of the trial judge are not changed or affected by Act No. 165 of 1934 amending and re-enacting section 2 of the statute. This act, which cannot apply in the present case because it became a law after this suit was tried, gives a litigant the right at any time during the pendency of the suit on appeal, or otherwise, to file the necessary affidavits and claim the benefits of the legislation. This act still makes it the duty of the judge, on presentation of the affidavits, to make inquiry into the facts of the case,

and the poverty and want of means there contemplated is not that obtaining at the time of filing the petition, or first pleading, as formerly, but the poverty or want of means obtaining at the time of the filing of the affidavits to that effect.

In the case of Loftin v. Frost-Johnson Lumber Co., 133 La. 644, 63 So. 252, plaintiff applied for a writ of mandamus to compel the judge to enter his order permitting the plaintiff to sue under the Pauper Act. The court there said:

"The judge refused to grant the order prayed for on the face of the petition and affidavits.

"The allegation of extreme poverty was not traversed and must be taken for true in the determination of the present application."

█ If, upon refusal of the judge to enter his order permitting applicant to litigate under the statute, the allegation of extreme poverty must be taken as true in the absence of a traverse, it follows with greater force and logic that when the judge does enter his order permitting applicant to litigate under the statute, the allegation of extreme poverty, in the absence of a traverse, must be taken as true.

█ Our conclusion, therefore, is that the trial judge, after entering his order permitting plaintiff to litigate under the statute, and in the absence of a rule by defendant to traverse plaintiff's affidavits of poverty, was without the power or discretion to demand payment by plaintiff of the accrued costs, and on the failure of plaintiff to pay same, to dismiss her suit.

█ Under the rule laid down in Loftin v. Frost-Johnson Lumber Co., supra, in the absence of a traverse, the allegations of plaintiff's poverty must be taken as true. Furthermore, the showing made was wholly insufficient to justify dismissal of plaintiff's suit. The only evidence before us is the testimony of plaintiff herself under cross-examination, the facts being set forth at the commencement of this opinion.

In the case of Fils v. Iberia, St. M. & E. R. Co., 145 La. 554, 82 So. 697, 700, the court, on rehearing, said:

"For being entitled to sue in forma pauperis, it is not necessary that the would-be litigant should be destitute even of a mattress upon which to lie, or a table upon which to eat, or a chair upon which to sit. Moreover, in the present case, the household furniture would not suffice for meeting the cost bill, even if sold at full value. And because

friends, or sympathetic or charitable persons, are willing to come to his assistance, rather than see him deprived of legal recourse, detracts in no way from his poverty within the intendment of the forma pauperis act. Act No. 156, p. 223, of 1912; Jackson v. Cousin, 138 La. 197, 70 So. 96; Mathis v. K. C. R. R., 140 La. 855, 74 So. 172; Kaufman v. Clark, 141 La. 316, 75 So. 65, L. R. A. 1917E, 756; Smith v. Lyon Cypress Co., 140 La. 507, 73 So. 312. We think the plaintiffs were 'poor' within the meaning of said act."

The judgment appealed from is reversed and set aside, and it is now ordered that this cause be remanded to the First city court of New Orleans for further proceedings according to law and consistent with the views herein expressed.

Reversed.