<em>Decree affirmed.</em>

PULLMAN'S PALACE CAR COMPANY

V.

WILLIAM LAACK.

*Master and Servant—Negligence of Master—Personal Injury to Serv-
ant—Proximate Cause.*

1.   Where the acts and events that intervene between the first cause and
a given injury, are the natural result of such first cause, and follow it in an
immediate and unbroken sequence, such first cause must be held to be the
proximate cause of the injury.

2.   An employer will not be permitted to escape the consequences of his
own negligence, and defeat an employe's claim for reparation for personal
injury suffered thereby, by urging against him his faithful endeavor to pro-
tect his employer's property from a danger which such negligence created.

[Opinion filed June 25, 1891.]

APPEAL from the Circuit Court of Cook County; the Hon.
FRANK BAKER, Judge, presiding.

Messrs. J. S. RUNNELLS and WILLIAM BURRY, for appellant.

Mr. EDMUND FURTHMANN, for appellee.

Pullman's Palace Car Co. v. Laack.

Moran, P. J.  Appellee was injured by being burned while in the employ of appellant, and on the trial of this action in the Circuit Court recovered a judgment for $4,000 for his damages.  Appellee had for several years worked for appellant in its brick yard attending to the brick kilns while they were burning.  In the fall of 1887 a system of burning the brick with oil instead of coke or wood was introduced, and after its introduction and before his injury appellee had aided in burning several kilns of brick by that system.  The machinery or process for burning the brick with oil, it is not necessary to describe, further than to say that from an oil tank on a car standing on a switch track about twenty feet from the kiln the oil was led to the burners in the kiln by means of a supply pipe which connected with a two-inch feed pipe, the latter being connected with the burner by a small rubber hose-pipe.  In this series of pipes, as they had been operated up till May 24th, the day of the accident, there had been three points at which the flow of oil to the burner could be shut off by means of a stop-cock, viz., at the tank, at the point where the supply-pipe joined the feed-pipe and on the small pipe leading to the burner.  On May 24th a new burner, known as the Cannon burner, was put in to be run in comparison with the Brown burner which had been in use, and in order to operate it, an additional tank of oil was attached to the feed-pipe, and that pipe was so arranged as to feed oil to the Cannon burners from one tank, and to the Brown burners from the other.  In making the connection between the additional tank and the Cannon burners no stop-cock or valve was put in where the supply pipe from the tank joined the feed pipe. This arrangement of the pipes was made by the superintendent or foreman, and appellee did not know that the stop-cock at the joining of the supply and feed pipes was left off.  It was not unusual for the rubber pipe leading to the burner to break and leak and the oil escaping from it would catch fire and it would become so hot that the valve on that pipe could not be used, and in such case the stop-cock at the joining of the supply and feed pipes was the one by which the oil was shut off, and a conflagration prevented.  Appellee went on

duty at the kiln at twelve o'clock on the night after the Cannon burners were put in, and about four o'clock in the morning the rubber hose connecting with said burners burst and the oil ran out and caught fire. Appellee ran to where he expected to find the stop-cock at the joining of the supply and feed pipe, but discovered that there was none there. He then called other employes to his assistance, sent for the fire department, and busied himself in an effort to save the brick machinery from burning. The fire was very hot, and he thought the oil in the tank would explode, and determined to disconnect the tank and get it away from the fire. He called on one of the men to shut off the tank, and on being told that it was shut off, he went under the tank and disconnected the feed pipe. Upon doing so, the oil from the tank flowed over him, the stop-cock having not in fact been shut off. His clothing became saturated with the oil and caught fire, and appellee was burned and suffered the pain and damage which form the ground of the recovery.

The verdict is conclusive that the failure to put in the stop-cock at the point where the supply and feed pipes connected, was negligence. The evidence justifies the conclusion that if said valve had been in place the fire would have been easily extinguished, and no accident to appellee would have occurred.

It is contended, however, that even if the absence of the stop-cock was negligence, such negligence was not the proximate cause of the injury. A new cause, it is said, intervened between such negligence and the injury to appellee. If he had not relied on the statement of a fellow-workman that the stop-cock on the tank was shut, and himself opened the way for the oil to flow out upon him, the injury would not have occurred. He was in a place of safety, but voluntarily exposed himself to danger in disconnecting the tank and attempting to move it off. We are unable to assent to this contention. Where the acts and events that intervene between the first cause, and the injury, are the natural result of such first cause, and follow it in an immediate and unbroken sequence, such first cause must be held to be the proximate cause of the injury. As said in Railway Co. v. Kellogg, 94

Pullman's Palace Car Co. v. Laack.

U. S. 469, " The question always is, was there an unbroken connection between the wrongful act and injury—a continuous operation ?   Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury ? "

The continued flow of the oil to feed the fire, and the intense and increasing heat and spread of the flames, were the natural and direct result of having no valve or stop-cock on the pipe at the proper point to shut off the oil when the rubber hose opened.   It was the duty of appellee as an employe, to try to save the property, and to seek to prevent the injury that would be caused by an explosion of the tank.   To do so, was the natural impulse of a loyal employe.   Had he run off and remained in a place of safety, and left the tank to explode and the fire to extend and accomplish the threatened destruction, his conduct would have earned the censure of appellant.

Justice will not permit appellant to escape the consequences of its own negligence, and defeat appellee's claim for reparation, by urging against him his faithful endeavor to protect its property from a danger which its said negligence created. He might, it is true, have turned off the stop-cock at the tank himself, or tested it to be sure that it was turned off, instead of acting on the belief that it was turned off; but the danger was increasing with every second of time.   Immediate action was required.   Common experience teaches that method, coolness and presence of mind, are rarely exhibited under such circumstances.   Had he stopped to think, he might have done better, or not have ventured at all; but there was not time for calm reflection.   What he attempted may have been unwise, even rash, when we judge it standing afar off.   As was said by Earl, J., in Wasner v. The Delaware, L. & W. R. R. Co., 80 N. Y. 215, " It is easy enough now to see that his effort was a hazardous and unsafe one.   But can we say, as a matter of law, that he, situated just as he was, with no time for cool reflection, failed in that which men of ordinary prudence would exercise under the same circumstances?   We think not."

The right of appellee to recover is sustained by the principle of the case just cited and by many others cited in the brief of appellee's counsel. Eckert v. L. I. R. R. Co., 43 N. Y. 502; Rexter v. Starin, 73 N. Y. 601; Linning v. Illinois Cent. R. R. Co., 47 N. W. Rep. 67.

It is claimed by appellant that the damages assessed are too large. The amount in such a case is peculiarly a question for the jury. There is some conflict in the evidence of the physicians as to the extent of the injuries, but there is evidence which tended to show permanent and serious results from the burning, and we can not say that the jury did not have the right to rely on such evidence.

There is no error, and the judgment must be affirmed.

*Judgment affirmed.*