GRACE C. MITCHELL JOHNSON, Administratrix of Estate of JAMES E. F. NEXSEN, v. TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, Appellant.—8 S. W. (2d) 891.

Court en Banc, July 30, 1928.

*R. E. Blodgett* and *J. L. Howell* for appellant.

*Charles P. Noell* for respondent; *Glen Mohler* of counsel.

886

BLAIR, J.—James E. F. Nexsen instituted this action in the Circuit Court of the City of St. Louis for damages sustained by him as the result of the alleged negligence of appellant. The jury found for him and assessed his damages at the sum of $30,000. The trial court compelled a *remittitur* of $15,000. Judgment was then entered for plaintiff in the sum of $15,000, and an appeal was granted to this court.

Upon suggestion that Nexsen had died since the appeal was granted, his administratrix was permitted to enter her appearance in this court and to be substituted as party respondent. The case fell to Division Two, where an opinion was written affirming the judgment of the trial court. One of the judges of that division dissenting, the case was transferred to the Court en Banc. After argument in this court, the divisional opinion was rejected and the case was reassigned to the writer.

The action was brought under the Federal Employers' Liability Act. That appellant was engaged in interstate commerce is admitted, and that Nexsen was engaged in such commerce at the time of his injury seems to be conceded in this court. The amended petition alleged that Nexsen was injured in attempting to "chock" a moving freight car which a fellow-servant had negligently failed

to "chock." The alleged negligence of such fellow-servant is the sole negligence charged against appellant in the petition. The answer contained a general denial and pleaded assumed risk upon the part of Nexsen and that whatever injuries he sustained were the result of his own negligence. The reply was a general denial of matters set up in the answer.

The facts are developed solely from the evidence offered by the plaintiff, as appellant stood on its demurrer thereto. Nexsen was a member of the switching crew which was at work in the yards of appellant near Sixteenth and Poplar streets in St. Louis. Nexsen was what was termed a "long field" man, whose duties, as described by himself, were as follows: "I was supposed to make all the couplings of cars that went up over Poplar Street, that were kicked in, see they were tied together and stop them. When they went into the switch track the foreman would give me the number on a car to go back and cut behind that car."

The "short field" man was one Sherman, whose general duties Nexsen described as follows: "He was to watch out ahead of the engine, if they went around a curve, for signals, and get down and throw the signals. And I would line up the Sixteenth Street yard from there to Thirteenth. And to look out for them."

Nexsen was a switchman and was thoroughly familiar with the Sixteenth Street yards, where the accident occurred. Poplar Street extends approximately east and west. The tracks pass around a curve south of Poplar Street and cross it and are laid almost directly north from the south side of said street. It was down grade as the tracks approached Poplar Street from the south.

At about 9:40 o'clock at night on October 10, 1922, the switching crew was at work in said yards. It was then raining and quite dark. The engine of Nexsen's crew "kicked" a freight car onto the east track in the yards. It was Sherman's duty as short field man to stop the car by chocking it. By this operation is meant the placing in front of the wheel of a car a block of wood large and heavy enough to arrest the car's movement and bring it to a stop without the use of brakes.

Nexsen could see Sherman at work about four hundred feet south at the point where the car should have been chocked. As the car which had been kicked on to the east track proceeded northward down grade toward Poplar Street, Sherman, for some unexplained reason, failed to perform his duty and put the chock under the car. Nexsen was standing at about the south line of Poplar Street and the fourth track from the east side of the yards when he discovered that Sherman had failed to stop the moving freight car and that it had passed him and was gathering speed and would certainly collide

with some loaded freight cars standing north of Poplar Street unless it was stopped. The car was about four car lengths south of Poplar Street when Nexsen first discovered its approach. He picked up a chock and ran toward the car and got safely across in front of it. He then placed the chock on the east rail in front of the wheel. As he raised up the end sill of the moving car struck him on the left shoulder and knocked him down. His left leg was caught under the wheels and was mangled to such extent that amputation between the hip and knee became necessary.

The only negligence charged against appellant was the negligence of its servant Sherman in failing to chock the moving car, thereby causing Nexsen to attempt to stop it to avoid a collision between that car and the cars standing north of Poplar Street. It is obvious that Nexsen would not have been injured because of Sherman's negligence had he not undertaken to avert the consequences of such negligence by attempting to stop the car. This act of Nexsen is said by appellant to have been the proximate cause of his injury. It is contended that the negligence of Sherman was not such proximate cause. This defense is available to appellant under the general denial in its answer, because it goes to the heart of appellant's case and tends to defeat the allegation of the petition that Nexsen's injury was caused by Sherman's negligence.

We agree with appellant and think that the negligence of Sherman was not the proximate cause of Nexsen's injury. Sherman's failure to chock the moving freight car when it reached him was merely one of the conditions which brought about the situation making possible the accident and injury to Nexsen. [Illinois State Trust Co. Admr., v. Missouri Pacific Railroad Co. (Mo. Sup.), 5 S. W. (2d) 368.] Nexsen detailed his duties and chocking the car, under the circumstances here disclosed, was not one of them. As a witness, he volunteered the statement that "I didn't have no right to chock that car. I wasn't supposed to chock it." This statement was stricken out on motion of appellant's counsel as not responsive to any question asked the witness. However, the entire record discloses that this voluntary statement was quite correct. The only result which could reasonably have been anticipated from the negligent act of Sherman in failing to chock the car was damage to the loaded freight cars standing north of Poplar Street. There is nothing in the record to show that the life or limb of any person was in danger by the failure of Sherman to chock the car. Nexsen's act in voluntarily exposing himself to danger by going in front of the rapidly moving freight car cannot be justified on the "imminent peril" doctrine. In our decisions that doctrine only applies where it appears that the act was necessary to save life or limb. [Eversole v. Wabash

Railroad Co., 249 Mo. 523, 155 S. W. 419; McManamee v. Missouri Pacific Ry. Co., 135 Mo. 440, 37 S. W. 119; Hill v. Cotton Oil Co., 202 Mo. App. 478, 214 S. W. 419.]

The case of Bacon v. Payne (Mich.), 190 N. W. 716, cited by appellant, is quite like the case at bar. Deceased was foreman of a section crew. One of his crew negligently threw a switch, thereby forcing a fast approaching passenger train to take a siding, instead of keeping the main track. Seeing the switch thrown the wrong way, deceased ran hurriedly toward the switch to change it and thereby keep the passenger train upon the main track. He was struck by the moving train and killed. It was shown that there was no particular danger to the passengers or the train and that only property damage was to be feared by reasons of the train running through the switch onto the siding. The Michigan Supreme Court held that deceased's administrator could not recover. It was said:

"Conceding Marks' negligence to the full and defendant's responsibility for its consequences, his act in no sense imperiled Oliver, who was then in a place of unquestioned safety from the closely approaching train. His own subsequent reckless conduct in negligently placing himself too close to the track in front of the swiftly approaching train was the sole and proximate cause of the accident, not Marks throwing the switch. Without his independent intervening human agency no harm could have befallen him from what Marks did. No precedent or concurrent causative act of defendant placed him in jeopardy."

Appellant could not reasonably have anticipated that, as a result of the negligence of its servant Sherman, Nexsen, by an act not in line with his duty, would seek to avert the consequence of such negligence by attempting to stop the car merely to prevent damage or destruction to appellant's property.

As Graves, C. J., said in State ex rel. Lusk v. Ellison, 271 Mo. 463, 196 S. W. 1088:

"The established rule of this court is that if the injury, as occasioned, was not one which could have reasonably been anticipated as a sequence of the alleged negligent act, then the alleged negligent act was not in law the proximate cause of the injury, and no recovery can be had therefor."

The same principle was announced in State ex rel. Boeving v. Cox, 310 Mo. 367, l. c. 375, 276 S. W. 869, and Doerr v. Brewing Assn., 176 Mo. 547, 75 S. W. 600.

Respondent cites a number of cases to support her contention that the negligence of Sherman was the proximate cause of Nexsen's injury. We will briefly consider such cases, although we think every one of them can be distinguished on its facts from the case at bar.

In Dean v. Railroad, 156 Mo. App. 634, 137 S. W. 603, two flat cars were permitted to move unexpectedly. One had a defective brake and the brake on the other had not been set. Permitting the brake to be defective on the one car in use and failing to set a serviceable brake upon the other were both negligent acts or omissions on defendant's part. When the cars started, plaintiff attempted to climb on one of them to set the brake. This act of his was in direct obedience to the order of the foreman to catch the car. It was held that plaintiff was not barred from recovering damages for his injuries on account of his contributory negligence in failing to take the safest way to board the moving car.

In Jones v. Kansas City, Fort Scott & Memphis Ry. Co., 178 Mo. 528, 77 S. W. 890, some freight cars, standing on a siding and not sufficiently secured by brakes or otherwise, were started moving down grade by a strong wind storm. They were thus moved upon and along the main track for about a mile, where a collision occurred between said cars and the locomotive being driven in the opposite direction by plaintiff's husband as engineer. The main question was whether defendant was negligent in view of the alleged unprecedented violence of the storm. This issue was resolved against defendant. It being held that the cars were permitted to move on to the main track as the result of defendant's negligence in failing to secure them sufficiently, there could be no question that a collision between such cars and a train moving in the opposite direction could reasonably have been anticipated as the result of such negligence. The negligence there was clearly the proximate cause of deceased's death in the ensuing collision.

In Smith v. Spokane Falls & N. Railroad Co., 52 Wash. 350, the question was whether or not it was plaintiff's duty to put his head out of the car door to look forward along the train at the time he was struck by a coal chute negligently placed too close to the track. It having been determined by a divided court that such was plaintiff's duty, no difficulty was found in holding that his injury was proximately caused by defendant's negligence in constructing the coal chute too close to the track.

In Erie Railroad Co. v. Caldwell, 264 Fed. 947 (C. C. A. 6th Cir.), plaintiff climbed up on a moving car which had been permitted to move down grade on account of a defective drawbar. It was part of defendant's duty to stop the car. It was moving at a rate of about five miles per hour when he climbed on it from a place of safety and attempted to set the brake. Before he could stop the car it collided with another car and plaintiff was injured. He was allowed to recover damages, and it was held that his act of climbing on the car and attempting to stop it was in the performance of his duty and

that such act was not an independent intervening cause of his injuries which would excuse the railroad from the results of the collision. The ruling was based squarely upon the fact that plaintiff was in the line of his duty when he attempted to stop the car. The court said:

"Notwithstanding the result, plaintiff's performance of duty cannot be held to be the proximate cause of the injury, any more than it would have been the proximate cause, had he been upon the car at the time the coupler broke, and had remained at his post in the performance of service clearly within the scope, and manifestly within the urgent necessity, of his employment, until the collision occurred. Any other conclusions would, in effect, place a premium on faithlessness and disregard of duty."

In Harker v. Railway Co. (Iowa), 55 N. W. 316, the question of proximate cause was not considered. It was held that plaintiff was not guilty of contributory negligence as a matter of law in assuming a dangerous position on a moving car in direct obedience to an order of his superior officer.

In Kane v. N. C. Ry. Co., 128 U. S. 91, plaintiff was injured in the line of his duty while climbing down a box car which defendant had negligently permitted to be used without a step. It was held that plaintiff was not guilty of contributory negligence as a matter of law and that his own negligence was not the proximate cause of his injury. The facts present no similarity to those in the case at bar.

In Erie Railroad Co. v. Schomer, 171 Fed. 798 (C. C. A. 6th Cir.), plaintiff's act in going across the end of a moving freight car, whereby he was injured, rather than to get on the other side in a safer way, was held not to be such contributory negligence on his part as to bar a recovery, in view of the haste required to get on the other side of the car in order to give signals to the engineer. There is no suggestion in the opinion that defendant's negligence in furnishing a defective car was not the proximate cause of the injury. Only the alleged concurring negligence of defendant and negligence of plaintiff as barring recovery were considered.

In Wellington v. Pelletier, 173 Fed. 908 (C. C. A., 1st Cir.), plaintiff's decedent was excavating a trench between the rails when he was struck and killed by the movement of cars not properly secured, which got loose and ran down the grade upon deceased. The brakes had been set on the cars, but had been loosened by children playing thereon. It was held that the act of the children was not an intervening proximate cause. Defendant was held to owe deceased the duty to secure the cars otherwise than merely by setting brakes which children could loosen.

In Pullman's Palace Car Co. v. Laack, 41 Ill. App. 34, defendant had negligently failed to install a valve or stop-cock in an oil line

between stop-cocks at the oil tank car and the burner. The oil caught fire at a break in the hose at the burner and it became so hot there that plaintiff could not shut off the stop-cock at the hose. The intermediate stop-cock had not been installed. Plaintiff called other employees to his assistance and directed one of them to get on top of the tank car and shut off the flow of oil by turning the stop-cock there. Plaintiff then went under the car to disconnect the pipe so that the tank car could be moved away from the danger of the fire. The other employee failed to turn the stop-cock and plaintiff was covered with oil which caught fire and burned him seriously. He was permitted to recover. The court held that the act of plaintiff in going under the tank car in the emergency created by the fire was not the intervening proximate cause of his injury so as to relieve defendant of its negligence in failing to furnish a third stop-cock where plaintiff could have shut off the oil and stopped the fire before it got out of control. The Illinois Court of Appeals said:

"The verdict is conclusive that the failure to put in the stop-cock at the point where the supply and feed pipes connected, was negligence. The evidence justifies the conclusion that if said valve had been in place the fire would have been easily extinguished, and no accident to appellee would have occurred.

"It is contended, however, that even if the absence of the stop-cock was negligence, such negligence was not the proximate cause of the injury. A new cause, it is said, intervened between such negligence and the injury to appellee. If he had not relied on the statement of a fellow-workman that the stop-cock on the tank was shut, and himself opened the way for the oil to flow out upon him, the injury would not have occurred. He was in a place of safety, but voluntarily exposed himself to danger in disconnecting the tank and attempting to move it off. We are unable to assent to this contention. Where the acts and events that intervene between the first cause, and the injury, are the natural result of such first cause, and follow it in an immediate and unbroken sequence, such first cause must be held to be the proximate cause of the injury. As said in Railway Co. v. Kellogg, 94 U. S. 469, 'The question always is, was there an unbroken connection between the wrongful act and injury—a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury?'

"The continued flow of the oil to feed the fire, and the intense and increasing heat and spread of the flames, were the natural and direct result of having no valve or stop-cock on the pipe at the proper point to shut off the oil when the rubber hose opened. It was the

duty of appellee as an employee, to try to save the property, and to seek to prevent the injury that would be caused by an explosion of the tank. To do so, was the natural impulse of a loyal employee. Had he run off and remained in a place of safety, and left the tank to explode and the fire to extend and accomplish the threatened destruction, his conduct would have earned the censure of appellant.''

The language used by that court appears to lend some support to respondent's contention. However, we would not be justified in following that case in the face of the cases from our own State and other jurisdictions which we have cited.

Respondent cites numerous cases from other jurisdictions upon the proposition that the "imminent peril" doctrine applies where there has arisen an emergency created by the master's negligence and the servant acts in an endeavor to save life *and property*. There is no evidence that Nexsen acted to save life or limb and, as already shown, this State does not recognize the application of the "imminent peril" doctrine where mere property damage is involved. Having concluded that Nexsen's act in attempting to stop the moving car, and not Sherman's negligent failure to chock the car, was the proximate cause of Nexsen's injury, it follows that the case should not have been submitted to the jury. It therefore becomes unnecessary to consider appellant's other contention that Nexsen assumed the risk of injury under the facts in this case.

The judgment should be reversed and it is so ordered. *Walker. C. J., White, Ragland, Atwood,* and *Gantt, JJ.,* concur; *Gentry, J.* not sitting.