26248, 26267. NEWMAN, administratrix, *v.* SOUTHERN RAILWAY COMPANY; and *vice versa.*

DECIDED DECEMBER 4, 1937. REHEARING DENIED DECEMBER 17, 1937.

*Arnold, Gambrell & Arnold, Joel B. Mallet,* for plaintiff.
*Harris, Harris, Russell & Weaver,* for defendant.

STEPHENS, P. J. This was an action against the railway company, brought by the administratrix of W. F. Newman, under the

employer's liability act of Congress of April 22, 1908, to recover damages for the homicide of the intestate. The parts of the petition which are relevant and material to the error complained of in the bill of exceptions alleged in substance as follows: The decedent was employed by the defendant as a section foreman. On November 20, 1935, at a point about two miles north of the City of Jackson in Butts County on the defendant's line, the decedent was killed when a north-bound freight-train collided with a hand-car, which, as well as the decedent, was then engaged in interstate commerce, and his death was caused by the negligence of the defendant. The decedent and four men working under him had been working on the track, and were furnished with a motor-car and trailer, tools and appliances which are used in going from place to place on the section of track on which they were working, and had been so engaged since early morning. About 5 o'clock in the afternoon they had completed their labors for the day and loaded the tools on the two cars, and were proceeding southward toward Jackson where the cars and tools were to be placed off the track and laid aside until the next day's work, and while they were proceeding southward a north-bound freight train came into view; thus an emergency was created which involved the danger of a collision between the freight-train and the motor-car and trailer and danger of a wreckage of both and the loss of human life, and it became necessary for the decedent and the workmen to use every effort to get the motor-car and the trailer out of the way of the train. The decedent at once stopped the motor-car and ordered the hands to assist in removing it from the track; they got off the motor-car, and two of the hands uncoupled the trailer and pushed it back on the track northward, which was up a steep grade, and turned one end of the motor-car off the track, which was the proper method to get it off, and were endeavoring to lift the end of the motor-car which remained on the track, when the freight train ran into the motor-car, and the decedent was so crushed and mangled in the collision both by the motor-car and the engine that he died. The defendant was negligently running the train off of its schedule time; it was not a train of regular daily operation, and was running one hour and fifty minutes late. On leaving Jackson that morning to go to work, the decedent had been given a lineup of trains, and the train which collided with him, known as "No. 50,"

was not included in that lineup, and was negligently running at a speed of fifty to sixty miles per hour, this being an unreasonable speed, and the rules of the defendant requiring a reasonable speed at all times. The engineer and fireman in charge of said train negligently failed to keep the proper lookout ahead, the track containing many curves, and it was well known to them that section hands were working on the track at that point. Had said train been running at a proper and reasonable speed, the decedent and the section hands would have been able to remove the motor-car and trailer from the track in time to avoid colliding with the train. The train came into view of the crew of the motor-car and decedent more than one thousand feet away, and at the same time the motor-car and trailer became visible to the crew of the engine, and ordinary care required that all effort should have been made to stop the train, inasmuch as the motor-car was on the track ahead of it, and there was obvious danger of a collision unless the train stopped or the motor-car should be removed. By the exercise of ordinary care and by the application of the brakes at said distance of one thousand feet the train could have been stopped before colliding with the motor-car, or the speed of the train could have been so reduced as to enable the crew of the motor-car to remove it from the track so as to prevent such a violent collision as did occur; in either of which events the life of the decedent would have been saved. The crew of the engine negligently failed, at a distance of one thousand feet away, to put on the brakes, although the decedent was in plain view on the motor-car at said time, and although ordinary care required that the decedent and the motor-car should have been discovered and the brakes on the train applied. There was a public-road crossing approximately one mile south of where the collision occurred, and it was the duty of the defendant and the employees on said freight-train to blow the whistle of the locomotive on approaching said crossing, under a penalty prescribed by law; and the crew of the engine failed to blow said whistle. There was a road crossing about two hundred feet north of where the collision occurred, and the hand-car was between the train and said road crossing, and the defendant had ballasted and prepared the track for said crossing, and had erected a blow-post for said crossing, and in the exercise of ordinary care it was the duty of the defendant, beginning at a point four hun-

dred yards from said crossing, to blow the whistle for the crossing, and the defendant negligently failed to do so and the same contributed to said disaster. Inasmuch as the train was running one hour and fifty minutes late, and inasmuch as the train was frequently annulled, and inasmuch as the section hands were working on this section of the track, and inasmuch as there were curves at this portion of the road at frequent intervals, it was the duty of the engineer to blow the whistle at frequent intervals; and the defendant failed to blow the whistle. The defendant's servants in charge of the train knew that said section contained a section crew and knew that every day, except Saturday and Sunday, said section crews were on the track at this time of day, returning to the point where the cars and equipment were kept when not in use; and said defendant's servants negligently failed to give proper warning of their approach, and failed to keep a proper lookout ahead, since they knew, or in the exercise of ordinary care should have known, of the proximity at said time and place of a section crew on the tracks of the defendant. When the train came into view an emergency was created, the motor-car and trailer constituting an obstruction which would likely wreck a train, destroy property, and take human lives, and immediate action was required for the safety of the property involved and of the employees both on the motor-car and on the train; and in view of said emergency the conduct of the decedent in attempting to remove said motor-car and thus save life was, under all the circumstances, not only the act of a courageous man intent upon doing his duty as an employee and as a man, but was also an act in the exercise of ordinary care and diligence.

The second count of the petition contained the same allegations as the first count, except that the speed of the train was alleged to have been from thirty to thirty-five miles an hour; and it contained different allegations as to the happening of the accident, as follows: The decedent and the hands got off the motor-car, and two of the hands uncoupled the trailer and pushed it back on the track northward, which was a steep upgrade, down which cars would stop, and then run back of their own momentum if left unchocked. The decedent and one of the hands turned one end of the motor-car off the track, which was the proper method to get it off, and the decedent was attempting to lift off the track the end

of the motor-car which remained on the track, and had his back to the north. The two hands who pushed the trailer back northward up the grade negligently failed to adopt any means to keep it from coming back down the grade as inevitably it would under the laws of gravity, and negligently failed to chock it or in any way arrange to keep it stationary; and in the exercise of ordinary care they could have chocked it with slag, rock, or any similar object, all of which was abundant on the track; and they negligently allowed the trail-car, after having been pushed some five or six feet backwards, to come back down on the track. The decedent was plainly visible at the end of the motor-car, attempting to lift it, and the two hands negligently allowed the trail-car to come back on the decedent without giving him any warning or without making the least effort to chock or stop the trail-car which ran into and against the decedent and the motor-car, and operated to hold and pin the decedent against the motor-car, rendering it impossible for him to escape, and this was several seconds before the train reached the point where the motor-car was, and had the decedent been free he could have escaped from the track. He was absorbed in the work of removing the motor-car, had his back to the trail-car, and did not in the exercise of ordinary care know it was coming back on him. The two hands who pushed the trail-car northward up the grade and negligently failed to chock it or stop it, and allowed it to come back on the decedent without warning and to catch and hold him until the collision occurred, contributed to said disaster; and had the decedent not been caught by said trail-car he would have had an opportunity to escape and would have escaped. The two section hands were further negligent in that after said trail-car rolled down on the decedent, catching him from behind and pinning him, they could in the exercise of ordinary care, for several seconds before the train reached the motor-car, have pushed said motor-car off the decedent and thus released him, but they negligently failed to do so.

The defendant demurred to each count of the petition, on the ground that it set forth no cause of action. The plaintiff amended both counts by alleging that the crew of the engine and train saw the motor-car more than one thousand feet away, and saw that it was stopped and that efforts were being made to remove it from the track, and it was apparent that unless the train should stop

or slow up its speed the motor-car and the lives of those on it would be imperiled; and yet the crew of the engine negligently failed to cause the engine to be stopped, as ordinary care required, and in the exercise of ordinary care the engine could have been stopped within one thousand feet, and likewise could have been slowed up so as to avoid any injury to persons or property. After these amendments had been allowed, the defendant renewed its general demurrer to the petition as amended, and the demurrer was overruled. The defendant filed an answer in which it denied that its employees were negligent, and asserted that it had used all the care and diligence required of it in and about the matters complained of in the petition, but that the decedent himself was negligent and failed to exercise ordinary care, and could have avoided the consequences of its negligence (if any) by the exercise of ordinary care, and that the injury was due to the risk of the services which the plaintiff's intestate assumed. After evidence on behalf of both parties was heard the defendant moved that the court direct a verdict for the defendant, which motion was granted. The plaintiff moved for a new trial on the general grounds, and on the ground that the court erred in directing the verdict, there being issues of fact in the case which required its submission to the jury. The motion for new trial was overruled, and the plaintiff excepted. The defendant filed a cross-bill of exceptions, showing that it excepted pendente lite to the overruling of its demurrer and assigning error thereon.

■ The defendant relies mainly on the case of Chesapeake & Ohio Railroad Co. v. Nixon, 271 U. S. 218. A careful examination of the facts in that case discloses that it is authority only for the proposition that the engine crew are not bound to keep a lookout for section-hands on the track. The plaintiff cites, as qualifying the decision in the Nixon case, Rocco v. Lehigh Valley Railway Co., 288 U. S. 275, where the collision occurred on a blind curve where Rocco could not see the approaching electric train, nor could the motorman see him. The principle applied in the Rocco case supports the contention of the plaintiff, because, if the mere probability of the presence of an inspector on the track required certain diligence of the engineer, surely the actual presence of the section crew on the track after being seen by the fireman might require certain diligence on the part of the engine crew. It was

held in the Rocco case that the questions of negligence and contributory negligence were for the jury. The defendant cites *Southern Railway Co.* v. *Simmons,* 24 *Ga. App.* 96 (100 S. E. 5), in which the facts were materially different from those of the present case, and where it appeared that the collision occurred on a dark and foggy morning about daylight, and a witness testified that the engineer could not have seen more than fifty feet, because it was cloudy and smoky. In the opinion the court said that "the cloudy, misty, foggy, and smoky condition existing at the time the injury occurred prevented the engineer from seeing the plaintiff in time to avoid the accident." In the *Simmons* case, the court cited *L. & N. R. Co.* v. *Kemp,* 140 *Ga.* 657, 660 (79 S. E. 558), where the alleged negligence of the train crew was in running the train at a dangerous speed, and in running by and passing a flagman, and in not stopping the train on seeing the proximity of the handcar. The Supreme Court said: "In all of the plaintiff's testimony there is no evidence to show any negligence whatever upon the part of the employees who were operating the freight-train, nor upon the part of the employees who were engaged with him in removing the hand-car." In the present case there were a number of facts in the evidence from which the jury could form a judgment upon the principal grounds of negligence alleged against the defendant. Two of these are now insisted on. First; that the train was not stopped nor its speed checked after the fireman saw that the section hands, in their effort to remove the motor-car from the track, were in a perilous position; second, that two of the section hands allowed the trailer which had been disconnected from the motor-car to roll down against the decedent, thereby entangling him between the motor-car and the trailer and preventing him from escaping in time to avoid injury.

The alleged negligence of the engine crew necessarily involved the facts of speed, time, and distance, and calculations therefrom. Without taking these matters into consideration no opinion could be formed as to whether there was a duty to stop or check the train, or as to the possibility of doing so in time to avoid injury to the decedent. The evidence furnished certain data from which an opinion could be formed. The opinion of the engine crew that they did everything possible to save the decedent from injury is not necessarily to be accepted as against the physical facts. The un-

contradicted evidence showed that a person on the track where the collision occurred could be seen from a point on the track nine hundred and seventy-five feet away (twenty-five rail lengths of thirty-nine feet each), which latter point was where the engine crew came around a curve into view of the track for a long distance ahead. Both the engineer and the fireman testified that they were looking out at the time of coming around this curve. Along the track between the point where the brakes were applied and the place of collision both the engineer and the fireman testified in car-lengths. Several figures were given by different witnesses as to the length of a freight-car, ranging from thirty-nine to forty-six feet. The fireman testified that he was ten or twelve car-lengths away when he first saw the motor-car; but he also said that he saw it as soon as it could have been seen, that he immediately told the engineer "hold her," and the engineer immediately applied the brakes. The engineer testified that when the fireman spoke to him the engine was only two or three car-lengths away from the motor-car, and he immediately applied the brakes, and that he was running from thirty-five to forty miles an hour. The fireman testified that the speed was down from thirty-five or forty to twenty or twenty-five when they hit the motor-car. Another witness testified that the speed was not appreciably reduced. The engineer testified that the train was stopped within twenty to twenty-three car-lengths from the place where he put on the brakes; the fireman testified that the train stopped about fifteen car-lengths after the motor-car was hit. It was for the jury to determine the facts. The allegations in the petition as to negligence on the part of the section crew in letting the trailer roll against the decedent were supported by evidence. It seems that this act may have contributed to the injury, because the fireman who witnessed the whole occurrence testified that the negroes ran towards Macon, the other two fellows lit out the other way; Mr. Newman (the decedent) "started north towards Atlanta," and was struck, not by the engine, but by fragments of the motor-car. From this it might seem that Newman almost escaped; and it might seem from all the testimony that he could have escaped if the speed of the train had been sooner reduced or if he had not been impeded by the trailer rolling down on him. This was a matter for the jury.

■ Did the act of the decedent in exposing himself to injury

preclude a recovery by his representative? In a case brought under the Federal employer's liability act contributory negligence by the decedent does not .necessarily defeat a recovery, but may reduce the amount of damages recoverable. U. S. C. A. title 45, § 53. The petition set out a cause of action, and the evidence was sufficient to authorize a verdict for the plaintiff. The court did not err in overruling the demurrer, but erred in directing the verdict for the defendant.

*Judgment reversed on the main bill of exceptions, and affirmed on the cross-bill. Sutton and Felton, JJ., concur.*