82 S.E.2d 346 (1954)
240 N.C. 338
GRAHAM
v.
ATLANTIC COAST LINE R. CO.
No. 671.
Supreme Court of North Carolina.
June 4, 1954.
*349 Clark & Clark and Nance & Barrington, Fayetteville, for plaintiff, appellee.
Shepard & Wood, Smithfield, and Rose & Sanford, Fayetteville, for defendant, appellant.
BOBBITT, Justice.
The complaint discloses that Graham was chief maintenance man for a section of defendant's signal system along its main line; further, that while engaged in the performance of his duty, he was struck and killed on the main line by the train known as the Bennettsville freight. While these hints that Graham and the defendant were engaged in interstate commerce are discoverable, no allegations to this effect are included in the complaint. Nor is there any allegation with reference to the dependents of Graham. In short, the allegations are appropriate as a statement of a cause of action for damages for wrongful death under the North Carolina statutes now codified as G.S. §§ 28-173, 28-174, and G.S. §§ 60-64 et seq.
During the presentation of plaintiff's testimony it became apparent that both Graham and defendant were engaged in interstate commerce on the occasion of Graham's death. Hence, the plaintiff's sole remedy was under the Federal statute. Mondou v. New York, N. H. & H. R. Co., 223 U.S. 1, 32 S.Ct. 169, 56 L.Ed. 327, 38 L.R.A.,N.S., 44; Wilson v. Massagee, 224 N.C. 705, 32 S.E.2d 335, 156 A.L.R. 922, and cases cited therein.
*350 Defendant thereupon moved to dismiss the action "on the ground that the suit was brought as an intrastate action under the laws of North Carolina, whereas the evidence shows the case arises under the Federal Employers' Liability Act." The court overruled defendant's motion to dismiss and allowed plaintiff to amend her complaint so as to include allegations appropriate to an action under the Federal statute, principally allegations that both employee and employer were engaged in interstate commerce and that plaintiff, widow of Graham, was his sole dependent and as such was the beneficiary of any recovery. Defendant excepted and now urges that a new cause of action was introduced more than three years from the date of Graham's death and must be dismissed. 45 U.S.C.A. § 56.
These facts are noted. Graham's death occurred 8 July, 1950. This action was commenced 7 July, 1951. The trial was at October Term, 1953. The facts constituting the tort, the basis of defendant's liability, are alleged in the original complaint. The amendment introduces no new allegations in this field.
Upon the facts alleged, conceding that plaintiff initially was in error in believing that her remedy was under the State statute, can the court permit her, more than three years after Graham's death, to amend her complaint so as to conform to evidence plainly disclosing that the employee and the employer were engaged in interstate commerce on the occasion of Graham's death and so as to allege that the widow was the sole dependent of Graham and the beneficiary of any recovery according to the rule of damages prescribed by the Federal statute? If so, is this a new cause of action as of the date of the amendment?
The power of the trial court under the State statute to allow the amendments is plain. G.S. § 1-163. Whether these amendments introduced a new cause of action, then barred by the Federal statute, is governed by the Federal law. Seaboard Air Line R. Co. v. Renn, 241 U.S. 290, 293, 36 S.Ct. 567, 60 L.Ed. 1006; New York Cent. & H. R. R. Co. v. Kinney, 260 U.S. 340, 43 S.Ct. 122, 67 L.Ed. 294; Williams v. Trustees of New York, N. H. & H. R. Co., 325 Mass. 244, 90 N.E.2d 320.
In Missouri, K. & T. R. Co. v. Wulf, 226 U.S. 570, 33 S.Ct. 135, 57 L.Ed. 355, Ann. Cas.1914B, 134, suit was brought under the Kansas statute by the mother as sole heir and next of kin to recover on account of her son's death. After the time prescribed for commencement of an action under the Federal statute, she was permitted to amend so as to prosecute the action in her capacity as administratrix and to allege that her intestate and the defendant were engaged in interstate commerce on the occasion of his death.
In New York C. & H. R. R. Co. v. Kinney, supra, "After several trials and about seven years and a half after the suit was begun the plaintiff was allowed to amend his complaint by alleging that at the time of the collision the plaintiff and the defendant were engaged in interstate commerce." The Court, speaking through Mr. Justice Holmes, held that these amendments did not introduce a new cause of action but, quoting from the Renn case, supra, "`merely expanded or amplified what was alleged in support of the cause of action already asserted * * * and was not affected by the intervening lapse of time.'" The opinion also quotes from Seaboard Air Line R. Co. v. Koennecke, 239 U.S. 352, 36 S.Ct. 126, 60 L.Ed. 324, this trenchant sentence: "`The facts constituting the tort were the same, whichever law gave them that effect.'" The great jurist neatly sums up the matter in these words: "Of course an argument can be made on the other side, but when a defendant has had notice from the beginning that the plaintiff sets up and is trying to enforce a claim against it because of specified conduct, the reasons for the statute of limitations do not exist, and we are of opinion that a liberal rule should be applied." (Emphasis added.)
While the earlier decisions may have afforded a plausible basis for defendant's position, the later decisions resolve all doubts adversely to defendant; and, upon the authoritative decisions cited, defendant's *351 motion to dismiss by reason of the amendments was properly overruled. New York C. & H. R. R. Co. v. Kinney, supra.
Defendant excepted to the court's action in overruling its motion for judgment of involuntary nonsuit.
Adequate consideration of defendant's position necessitates an analysis of the pleadings. Plaintiff's basic position as to negligence is that defendant turned the unscheduled Bennettsville freight onto the northbound track of the main line at Parkton, giving the locomotive engineer an order showing a clear track all the way to Fayetteville, when it knew that Graham and Gibson had left just thirty minutes or so before by motorcar on said track to check a defective signal south of Hope Mills; and that no information to this effect was given to those in charge of the Bennettsville freight. True, there are allegations as to the speed of the train, the blind curve in the cut north of Rock Fish Creek, the failure to ring the bell or blow the whistle, etc. However, these allegations are made in combination with, rather than independent of, plaintiff's basic position that defendant was negligent under all the circumstances in turning the Bennettsville freight onto this section of the northbound track of the main line.
Defendant alleges contributory negligence on the part of Graham in these respects: (1) that, with knowledge that the Bennettsville freight was to run some time that afternoon, he negligently failed to call the Train Dispatcher from a nearby railroad telephone for a further report as to "line-up" after completing the signal repair job and before returning to Parkton; and (2) that he negligently proceeded south on the northbound track when he could have removed the motorcar to the southbound track with greater safety at the place where the repair work was done and especially at a point some 600 yards to the north at the Hope Mills station. Defendant further alleges that Graham was negligent in that after he saw the approaching train he remained on the track when by the exercise of due care he could have got off and thus escaped injury and death; and that such negligence was the sole proximate cause of his death.
In this connection, it is noted that the Train Dispatcher at Rocky Mount who gave Graham the "line-up" for the "northbound" track about 2 p. m. testified that it was not necessary for Graham to call up again "under an hour" and that "they are safe in the line-up for an hour." There is also evidence tending to show that the Bennettsville freight left Parkton about 2:35 p.m. and that the motorcar and Graham were struck shortly after 2:40 p. m. Thus, there is evidence tending to support the view that Graham and Gibson could and would have got to the road crossing where they were to remove the motorcar from the northbound to the southbound track, some 200-400 yards south of where the repairs were made and several miles north of Parkton, within an hour from the time Graham at Parkton had the telephone instructions from the Train Dispatcher at Rocky Mount. Too, while Graham had the "line-up" on the northbound track, he had no information as to "line-up" on the southbound track.
In order to recover under the Federal Employers' Liability Act, plaintiff must prove that defendant was negligent and that such negligence was the proximate cause, in whole or in part, of Graham's death. Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520. Contributory negligence of Graham would not bar a recovery by plaintiff. The effect would be that his dependent widow could not recover the full amount of damages sustained by her on account of his death but would be barred from recovery of the proportion of such damages attributable to Graham's contributory negligence. 45 U.S. C.A. § 53. And since the 1939 amendment to the Federal Employers' Liability Act, 45 U.S.C.A. § 54, Graham cannot be held to have assumed any risk of his employment when death results in whole or in part from the negligence of any of the agents of the railroad, the effect of the amendment being to obliterate from the law every vestige of the doctrine of assumption of risk. Tiller v. *352 Atlantic Coast Line R. Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610, 143 A.L.R. 967. Decisions prior to the 1939 amendment must be considered in relation to the rule as to assumption of risk then embodied in the law. See Delaware, L. & W. R. Co. v. Koske, 279 U.S. 7, 49 S.Ct. 202, 73 L.Ed. 578; Strunks v. Payne, 184 N.C. 582, 114 S.E. 840. Thus, if the defendant's oncoming train, rounding the curve, through the cut, was turned onto this track through negligence of the Train Dispatcher, neither Graham's failure to anticipate its approach nor his inability to remove the motorcar under the circumstances of extraordinary known risk is a defense on the basis of assumption of risk.
Defendant's position is that its negligence, if any, and the contributory negligence of Graham, had spent themselves; and a new factual situation had arisen. Then, with knowledge of the danger, Graham and Gibson undertook to remove the motorcar when they could have abandoned it and escaped injury; that Gibson got out of the way of the oncoming train; that Graham could have done so; and that Graham's conduct in failing to abandon the motorcar and get off the track should be held to constitute the sole proximate cause of his death as a matter of law. Thus, defendant contends, its negligence, if any, was "insulated."
It must be borne in mind that the alleged negligence of defendant upon which plaintiff relies is the fact that the oncoming train had been turned into this section of track without warning to those in charge that Graham and Gibson were there with the motorcar, not the failure of the locomotive engineer to stop the train after he saw or could have seen them. Indeed, so far as the evidence discloses, the train, under the conditions then existing, could not have been stopped within a shorter distance. This alleged negligence, if established, continued to the moment of actual impact and so constituted a proximate cause of Graham's death. As stated by Seawell, J., in Henderson v. Powell, 221 N.C. 239, 19 S.E. 2d 876, 879: "No negligence is `insulated' so long as it plays a substantial and proximate part in the injury. Restatement of the Law, Torts, sec. 447."
The defendant's contention seems to be that since Graham, by abandonment of the motorcar, could have avoided injury and death, he must be held solely responsible therefor notwithstanding defendant's negligence. The doctrine of last clear chance, which pre-supposes both negligence and contributory negligence, relates to a person having charge of an instrumentality who can but fails to bring it under control and so avoid inflicting injury. See Wade v. Jones Sausage Co., 239 N.C. 524, 80 S.E.2d 150, and cases cited therein.
While there is some conflict in the decisions, we are in agreement with the rule supported by the greater weight of authority, namely, that it is for the jury to say whether, under the circumstances then existing, Graham failed to exercise due care for his own safety, under the rule of the ordinarily prudent man, in undertaking to remove the motorcar from the track and in failing to get out of the way of the approaching train, and, if so, whether such negligence was a contributing proximate cause or the sole proximate cause of his death. Joice v. Missouri-Kansas-Texas R. Co., 354 Mo. 439, 189 S.W.2d 568, 161 A.L.R. 383; Moran v. Atchison, T. & S. F. R. Co., 330 Mo. 278, 48 S.W.2d 881; Newman v. Southern R. Co., 57 Ga.App. 70, 194 S.E. 237; Owen v. Kurn, 347 Mo. 516, 148 S.W.2d 519; Texas Cent. R. Co. v. Bender, 32 Tex.Civ.App. 568, 75 S.W. 561; International & G. N. R. Co. v. McVey, Tex.Civ.App., 81 S.W. 991; Dailey v. Burlington & M. R. R. Co., 58 Neb. 396, 78 N.W. 722; Winczewski v. Winona & W. Ry. Co., 80 Minn. 245, 83 N.W. 159; Mitchum v. Chicago, R. I. & G. R. Co., 107 Tex. 34, 173 S.W. 878; St. Louis, I. M. & S. Ry. Co. v. Morgan, 115 Ark. 529, 171 S.W. 1187; Illinois Cent. R. Co. v. Evans, 170 Ky. 536, 186 S.W. 173.
Three cases, Deere v. Southern Pac. Co., 9 Cir., 123 F.2d 438, and Foreman v. Texas & N. O. R. Co., 5 Cir., 205 F.2d 79, cited *353 by defendant, and Mathis v. Kansas City Southern R. Co., 140 La. 855, 74 So. 172, lend support to defendant's position. While each of these cases is distinguishable factually, principally on the ground of the failure to show negligence on the part of the railroad company, statements in the opinions are in accord with defendant's contentions here. But, after careful consideration, we adopt the majority view as stated above.
The case before us is distinguishable from those where an employee, in a position of safety, consciously exposes himself to imminent peril outside the line of his duty and injury or death results. Johnson v. Terminal R. Ass'n, 320 Mo. 884, 8 S.W.2d 891, 61 A.L.R. 572, Annotation, 61 A.L.R. 579. Compare, Bobango v. Erie R. Co., 6 Cir., 57 F.2d 667.
Temple v. Hawkins, 220 N.C. 26, 16 S.E. 2d 400, cited by defendant, is not in point. The plaintiff there, whose truck stalled on the crossing, could have but failed to get out and avoid injury. Under the State law his right to recover was barred by his contributory negligence.
We omit reference to decisions where the train ran down a motorcar or velocipede proceeding in the same direction for there the element of lack of knowledge of the train's approach until the time of impact is ordinarily the factor of greatest importance.
It appears now that if Graham had abandoned the motorcar when he saw the approaching train he would in all probability have escaped from his dilemma without injury. But he was and had been in charge of this particular motorcar. It was his employer's property, entrusted to him for use in the course of his employment. He owed a duty to his employer to exercise due care under all the circumstances to save it from damage or destruction by removing it from the path of the oncoming train. At the same time, he was under the duty to exercise due care for his own safety. While the company rules, offered by defendant, enjoined its employees to act always on the principle of safety first, Rule 3 specifically provides that "employees to whom motorcars are assigned are responsible for their use and condition;" and Rule 14 provides that "any violation of the foregoing rules will be regarded as cause for dismissal." Moreover, the probable consequences to the oncoming train and its crew, as well as to the motorcar and to him and Gibson, in the event of a head-on crash, were to be considered.
Nor can it be said as a matter of law that Graham did not have reasonable ground to believe that he and Gibson could complete the removal of the motorcar before the train got to it. The Moran case, supra, while referring to Moran's conduct in terms of the now obliterated doctrine of assumption of risk, contains this statement, apposite here: "There was evidence that Moran lacked only eight inches of being in the clear when the engine struck him. Evidence that he came so near getting in the clear tends to show that he had reasonable grounds for believing that he would have time to remove the motorcar from the track, and that he did not appreciate the near and dangerous approach of the train. * * * Under the circumstances shown we cannot judicially say that Moran did not act as an ordinarily prudent person would have acted under the same circumstances, and therefore decline to hold, as a matter of law, that he assumed the risk." And in the Bender case, supra, in relation to facts more favorable to defendant's position than the facts here, the court said: "Nor did appellee forfeit his right to recover by trying to remove the handcar from the track. It is by no means clear from the evidence that a prudent man in his situation would have pursued a different course."
Whether, in attempting to save his employer's motorcar and to avoid the consequences of a head-on collision, Graham's actions were those of an ordinarily prudent person so situated, or were those of a foolhardy and reckless person, indifferent to his own safety, could not be answered as a matter of law. It was for determination by the jury.
*354 The conclusion we reach is that the issues of negligence and of contributory negligence were for the jury. If the jury had found that Graham's death was caused solely by his own negligence, this would have required a negative answer to the first issue, embracing as it does both negligence and proximate cause. The motion for judgment of involuntary nonsuit was properly overruled.
Even so, conflicting instructions to the jury on the issue of damages necessitate a new trial. It is noted that defendant's position as to matters set out below are duly presented by proper exceptive assignments of error.
The original complaint alleged that Graham's estate had been damaged by his wrongful death in the amount of $40,000. When the amendments were allowed, the complaint as amended alleged that Graham's widow as sole dependent and beneficiary had been damaged by his wrongful death in the amount of $40,000.
Upon reaching the issue as to damages, the court gave the jury full and correct general instructions on the subject of comparative negligence in relation to damages, to be applicable in the event the jury answered both the negligence and the contributory negligence issues in the affirmative, i. e., that the plaintiff was entitled to recover for the benefit of the widow only such portion of her total damages resulting from Graham's death as was attributable to defendant's negligence and was not entitled to recover such portion as was attributable to Graham's negligence.
After these instructions the court reviewed at some length the plaintiff's evidence and her contentions thereon to the effect that she had been damaged by reason of Graham's wrongful death in the amount of $40,000. The court then says, by way of reviewing defendant's contentions: "The defendant further contends that the sum of $40,000 is an exorbitant price and, even should you come to consider the third issue, that you should not award damages in any large amount like that or any other substantial amount, but the defendant contends it only should be in some amount, if any at all, much less than the amount contended for and demanded by the plaintiff in the action."
In the review of contentions, nothing is said with reference to contentions as to diminution of total damages on account of Graham's contributory negligence, if any, by the proportion of total damages attributable to Graham's negligence. The failure to include the respective contentions of the parties on this subject, after having reviewed fully the plaintiff's evidence and contentions as to the damages the widow has suffered on account of the wrongful death of Graham, must be considered in the light of the court's final word and summary instruction to the jury, to wit:
"So, gentlemen, if you come to consider that third issue as to damages, and if you award plaintiff damages in the case, the Court instructs you that the damages recoverable, if any, is limited to the present cash value or present worth of such loss as results to the beneficiary occasioned by her, that is by the plaintiff, Mrs. Graham, being deprived of the reasonable expectancy of pecuniary benefit because of the alleged wrongful death of her deceased husband and the amount to be allowed is limited strictly to the financial loss thus sustained."
In the instruction, quoted above, the court, by inadvertence, instructed the jury that the plaintiff was to be awarded damages to compensate for the widow's loss "by being deprived of the reasonable expectancy of pecuniary benefit because of the alleged wrongful death of her deceased husband." (Emphasis added.) This final, positive and clear instruction obviously ignores the rule that, if Graham were guilty of contributory negligence (and a peremptory instruction on the contributory negligence issue had been given), the damages recoverable would be limited to the proportion of the total damages attributable to defendant's negligence. We are constrained to hold that this final, explicit instruction to the jury, which relates plaintiff's recoverable damages to the death of *355 Graham rather than to the negligence of defendant, may have had a pervading influence on the minds of the jury and may well be reflected in their answer of the issue, "$36,334.00."
As stated by Barnhill, J. (now C. J.), in State v. Overcash, 226 N.C. 632, 39 S.E.2d 810, 811: "When there are conflicting instructions to the jury upon a material point, the one correct and the other incorrect, a new trial must be granted. We may not assume that the jurors possessed such discriminating knowledge of the law as would enable them to disregard the erroneous and to accept the correct statement of the law as their guide. We must assume instead that the jury in coming to a verdict, was influenced by that part of the charge that was incorrect." See cases cited in State v. Overcash, supra; Dixon v. Brockwell, 227 N.C. 567, 42 S.E.2d 680; Green v. Bowers, 230 N.C. 651, 55 S.E.2d 192; In re Will of Kemp, 234 N.C. 495, 67 S.E.2d 672; State v. Howell, 239 N.C. 78, 79 S.E.2d 235.
A new trial is ordered. This renders unnecessary the consideration of other exceptive assignments of error brought forward by defendant. None of them may be pertinent upon the retrial of the cause.
New trial.
BARNHILL, Chief Justice (dissenting in part).
The majority, after analysing the complaint, state that "the alleged negligence of defendant upon which plaintiff relies is the fact that the oncoming train had been turned onto this section of track (between Parkton and the signal tower to the north) without warning to those in charge (of the train) that Graham and Gibson were there with the motorcar, not the failure of the locomotive engineer to stop the train after he saw or could have seen them." It is stated in effect that the allegations of speed, blind curve in the cut north of Rock Fish Creek, and the failure to ring the bell or blow the whistle constitute window dressing which alone would not support a recovery. I accept that interpretation of the complaint.
The testimony offered in support of this single alleged act of negligence presents these questions for decision: (1) Did the defendant, through its dispatcher, commit an act of negligence when it turned the unscheduled Bennettsville freight onto the northbound track within thirty minutes after having given Graham one-hour clearance for said track without giving any notice to those in charge of said freight that Graham and his companion had gone to repair the signal, and if so, (2) was such negligence one of the proximate causes of the death of plaintiff's intestate?
In the first place I cannot perceive that defendant breached any duty it owed the deceased when it let the freight proceed northward on the northbound track. The deceased needed clearance on the northbound track to make the trip to the signal tower. This he received. He had reached his destination when the freight entered upon the track. The dispatcher knew that the deceased had had ample time within which to reach his destination, and that it was the duty of deceased to make his return trip on the southbound track. There was no cause for the dispatcher to anticipate or foresee that the use of the northbound track by the freight would in any wise endanger either Graham or Gibson. He had reason instead to believe that they would return to Parkton on the southbound track.
If such conduct must be considered an act of negligence, it in no wise contributed to the death of plaintiff's intestate. It ceased to play "a substantial and proximate part" in the collision and resulting death so soon as the deceased discovered the approach of the train in ample time to stop the motorcar, leave the track, and reach a zone of safety. That he had ample time so to do is conceded. From that time on until the final crash, his life or death depended entirely upon what he should decide to do. Therefore, I am unable to perceive how it may be said that the action of the dispatcher in turning the train onto the *356 northbound track without warning the train crew that the deceased and his companion were somewhere to the north was a proximate cause of the death of plaintiff's intestate.
But the majority hold that the deceased may be excused for his conduct on the ground that he owed his employer the duty to protect the property entrusted to his care against damage or destruction. To say that this duty was so impelling that he must perforce risk his life in its performance would seem to me to carry it to the extreme. Self-preservation is said to be the first law of nature. To say that the rules of the company overrode this law and bound the deceased to risk his own life to protect the motorcar from damage or destruction or suffer the penalty of a discharge and excuses his failure to seek a place of safety in time to avoid injury or death is but to attribute to his employer and the law itselfa stoneheartedness beyond my comprehension.
The law as I understand it required him, when in the presence of a known danger, to use diligence to avoid the threatened injury or death. All other considerations faded into insignificance.
The deceased was negligent in two material respects, and in my opinion such negligence on his part constitutes the sole proximate cause of his injury and death.
When he began his return trip, it was his duty to use the southbound track. A telephone was available so that he could get clearance on that track. He elected to proceed southward on the northbound track when he knew, or should have known, that the engineer of a train proceeding northward would have no cause to anticipate that he would meet another train or motorcar going in the opposite direction on the same track. Then he proceeded to narrow the gap between his motorcar and the approaching train to the point a collision between the two became inevitable.
The deceased discovered the presence of the approaching train in ample time to stop his motorcar, leave the track, and reach a zone of safety. The peril was apparent for sometime before the collision. The way of escape was open. The duty to get off the track, out of the way of the oncoming train, was impelling. Yet he elected to remain on the track until the very moment of the collision, and he did so knowing the engineer could not stop his train within the available distance so as to avoid striking him. It is not a case of last clear chance or hidden peril. Whatever his motives and no doubt they were goodthey did not, in my opinion, excuse his conduct or shift the blame to the defendant. If he first thought he had time to remove the motorcar, it soon became apparent he could not do so. Certainly this is so if the train was traveling as plaintiff's evidence tends to show.
The record, in my opinion, discloses that the conduct of the deceased evidenced a reckless indifference to his own safety, which conduct on his part was the sole proximate cause of his injury and death. I, therefore, vote to sustain the motion for judgment of involuntary nonsuit.
Passing the question of nonsuit, I agree that (1) the original complaint constitutes a defective statement of a good cause of action, and that the order allowing amendment thereof rested within the sound discretionof the presiding judge, and (2) the conflict in the charge on the question of damages requires a new trial.
WINBORNE, J., concurs in dissent.